IN THE MATTER OF THE RESTRAINT OF NORMAN DOUGLAS CRANFORD.

(Filed 9 November, 1949.)

**1. Parent and Child § 4a: Clerks of Court § 7—**

Under the 1949 amendment to G.S. 50-13 (Ch. 1010, Session Laws of 1949) either parent may institute a special proceeding to obtain custody of his or her child in cases not theretofore provided for by this statute or G.S. 17-39, and this amendment authorizes a special proceeding by the mother of an illegitimate child to obtain its custody from her aunt, with whom she had entrusted the child, and thus restricts the jurisdiction of the Juvenile Court in such instances, G.S. 110-21, *et seq.*

**2. Judges § 2b: Parent and Child § 4a: Habeas Corpus § 3—**

A special judge has concurrent jurisdiction with the judge of the district to hear and determine a proceeding instituted by the mother of a child to obtain its custody, provided the proceeding can be heard and judgment rendered during the term of court the special judge is commissioned to hold. G.S. 7-58; G.S. 7-65.

**3. Parent and Child § 4a: Habeas Corpus § 3: Appeal and Error § 37—**

Where the mother of an illegitimate child, after her marriage to a person not its father, institutes *habeas corpus* proceedings against her aunt with whom she had left the child, to regain its custody, and the respondent files answer and thus makes a general appearance and at no time challenges the jurisdiction of the court, the Supreme Court, in its discretion, will treat the petition as a special proceeding under G.S. 50-13, and consider the appeal on its merits.

**4. Appeal and Error § 40d—**

The Supreme Court is not bound by a finding which is based on a conclusion of law.

**5. Parent and Child § 9—**

The acts of a mother of an illegitimate child in taking the child with her to live with her aunt and in leaving the child with her aunt upon her subsequent marriage to a person other than the father of the child, even though done with an accompanying statement that she waived right to further claim, *is held* not an abandonment of the child in law.

**6. Parent and Child § 4a—**

Where the mother of an illegitimate child takes it with her to live with her aunt, and upon her subsequent marriage to a person not the father of the child, leaves the child with her aunt, *held:* the mother is entitled to regain custody of the child from the aunt in proceedings instituted for this purpose upon the court's finding that the mother is a woman of good character and has a home proper and fit for the child to visit, notwithstanding that the aunt may be able to provide a more advantageous environment, the natural right of the mother to the custody of the child being paramount in the absence of a showing of unfitness.

Petitioner's appeal from *Sharp, Special Judge,* September Term, 1949, Randolph Superior Court.

The petitioner brought a *habeas corpus* proceeding for the purpose of regaining the custody of her illegitimate child whom she alleges she had entrusted to the care of an aunt, Mrs. W. O. Marsh. Shortly after the birth of the child she came to live in the home of her aunt and lived there with the child until her marriage to a person not the father of her child. She then left to live elsewhere, leaving the child in the custody of the aunt, as petitioner says, to remain while she was good to him, but as respondent says, as an unqualified surrender of custody and control, declaring that she would make no further claim. There was no adoption.

The matter came in due course to be heard by Judge Sharp, who heard evidence, made a finding of facts in which she found that the mother had abandoned the child by surrendering him to the unqualified custody of the aunt and asserting that she would make no further claim. She further found that the respondent is a woman of good character and is a fit person to have the custody of the child and that her home is a proper and fit place to rear it; that the mother of the child at the present time is a woman of good character and her home is a proper and fit place for the child to visit.

The order provides that the custody and the control of the child be awarded to the respondent and that the petitioner be allowed to visit the child at stated periods which shall not conflict with its school attendance; and that petitioner shall be allowed to have the child visit her on alternate week-ends.

The petitioner excepted to the finding of fact that she had abandoned the child and that it was to the best interest of the child that he remain in custody of the respondent; and to other findings on which the award of custody was based; excepted to the order, and appealed.

*Spence, Smith & Walker for petitioner, appellant.*
*Miller & Moser for respondent, appellee.*

Seawell, J. The petitioner, having suffered an adverse decision below, now makes an *ore tenus* objection to the jurisdiction of the trial court, and moves to dismiss the proceeding, intending, we understand, to bring her grievance to the Juvenile Court (G.S. 110-21 to -44) as a court having exclusive jurisdiction of the subject matter. This brings up the necessity of clarifying the jurisdiction, *in limine,* in order to see whether, with procedural propriety, we can reach decision on the merits.

Prior to the creation of the Juvenile Court *habeas corpus* was the recognized procedure for determining the custody of a child in the factual situation presented in this case, and was in common use. *Ashby v. Page,*

106 N.C. 328, 11 S.E. 283; *Latham v. Ellis,* 116 N.C. 30, 20 S.E. 1012; *In re Jones,* 153 N.C. 312, 69 S.E. 317; *Thompson v. Thompson,* 72 N.C. 32. Statutory exceptions and practice existing in certain relationships of parties, not obtaining here, did not, of course, affect the procedure.

In the creation of the Juvenile Court the Legislature gave it exclusive jurisdiction of the custody of children in certain categories set out in G.S. 110-21, in 1, 2, 3, order, including delinquency, parental neglect, abandonment, and other conditions detrimental to the welfare of the child. And, by a sweeping *addendum* in division 3, *supra,* extended such jurisdiction to all cases where the custody of children is involved, rendering the proceeding by *habeas corpus* unavailable. *In re Coston,* 187 N.C. 509, 122 S.E. 183; see *In re Tenhoopen,* 202 N.C. 223, 224, 162 S.E. 619. This is thoroughly discussed in its relation to *habeas corpus* in *Phipps v. Vannoy,* 229 N.C. 629, 50 S.E. 2d 906, which see. We may say now, since it is no longer law, that this provision was scarcely germane to the general tenor and purpose of the act, and put the natural rights of the parents who must resort to it in some jeopardy by its social implications, paramounting the interest of the State.

For this reason (or some other—we need not inquire), there was enacted Chapter 1010, Session Laws of 1949, (to which counsel seem not to have been advertent), making certain amendments to another statute, (G.S. 50-13), which, upon analysis, will be found to apply to the present controversy, and strictly affects the cited provisions of the statute. The amending provision rewrites the first section of G.S. 50-13, making it read as follows:

> "Provided, custody of children of parents who have been divorced outside of North Carolina, and controversies respecting the custody of children not provided for by this Section or Section 17-39 of the General Statutes of North Carolina, may be determined in a special proceeding instituted by either of said parents, or by the surviving parent if the other be dead, in the Superior Court of the county where the petitioner, or the respondent or child at the time of filing said petition, is a resident."

Examination of G.S. 50-13 and G.S. 17-39 discloses that neither of them, before amendment, made any provision for the custody of children under the factual situation or relationships involved in the case before us; and this remedy (Chap. 1010, Session Laws of 1949) was open to the petitioner when she mistakenly sued out *habeas corpus.*

The question arises whether, the remedy by *habeas corpus* having been completely eclipsed by the Juvenile Court jurisdiction, the act amending G.S. 50-13 has not revived it as an alternate remedy.

It certainly destroys the exclusiveness of the Juvenile Court in the premises, but it apparently does more. Considering the history of the legislation, and its intendments, we think the better view is that it provides a new and exclusive procedure for determining the custody of the child covering cases not coming within the exceptive provisions of the amendment, and hence inclusive of the case under review.

We now come to consider the jurisdiction of the hearing court from another angle.

Judge Sharp is a Special Judge. The record shows that she heard the matter at and during a regular term of Randolph Superior Court under a proper commission. Statutes delineating the jurisdiction of Special Judges have broadened that jurisdiction in close, if not final, approximation to that of "regular or elective judges" while holding the court to which they are assigned. *Shephard v. Leonard,* 223 N.C. 110, 25 S.E. 2d 445. Considering *in pari materia* the statutes covering the jurisdiction of judges with reference to the jurisdiction of special proceedings of this nature, especially G.S. 7-58 and 7-65, we are of the opinion that a special judge has concurring jurisdiction of matters of this kind with the resident judge and regular judge holding the courts of the district, if heard and completed, and judgment rendered, pending the duration of the court which such judge is commissioned to hold.

The petition in *habeas corpus* adequately set up the grievance complained of with all its essentials, and the answer of the respondent was correlative. By filing such answer she made a general appearance and did not at any time challenge the jurisdiction. In form and substance the petition is hardly distinguishable, except in name only, from the special proceeding contemplated in the statute. The Court will, therefore, in its discretion, treat the petition as a petition in a special proceeding under the statute and consider the appeal on its merits.

The Appellate Court is not bound by the findings of fact that the petitioner abandoned her child by entrusting her custody to her aunt, even though it may have been with an accompanying statement that she waived right to further claim. That is not the legal significance of abandonment in the statutes which have dealt with it as a basis of judicial jurisdiction, and we do not think it is in accord with its moral intendment where disposition of a child is concerned.

There was no adoption here, and respondent had no legal right to the possession of the child. *In re Shelton,* 203 N.C. 75, 79, 164 S.E. 322. As against the natural right of the mother she had only such defense as might be hers in consideration of the welfare of the child and the fitness

or suitability of the claimants of the custody. In this respect the judge, as above stated, found as follows:

"That the respondent Mrs. W. O. Marsh is a woman of good character and is a fit person to have the custody of said child, and that her home is a proper and fit place in which to rear said child; that the mother of the child at the present time is a woman of good character and her home is a proper and fit place for the child to visit."

On this finding establishing the fact that the woman is now of good character and her home a fit place for the child to visit or spend alternate week-ends, the award of custody of the child to the aunt cannot be sustained.

Where the fitness of the petitioner is unchallenged the natural right of the parent to the custody of the child cannot be denied because a more suitable custodian or a more advantageous environment is available, or because at sacrifice of parental right the child may have a better chance in life, and the "interest of the State" be protected. In a similar situation in *In re Shelton, supra,* the Court says as controlling the decision:

"As there is no finding of fact that the petitioner is not a suitable person to have the custody and control of her child, she has not forfeited her natural and legal right to such custody and control. It is well settled as the law of this State that the mother of an illegitimate child, if a suitable person, is entitled to the care and custody of the child, even though there be others who are more suitable. *Ashby v. Page,* 106 N.C. 328, 11 S.E. 283. As it appears from the findings of fact made by the court that the petitioner has not been deprived of her legal right to the custody of her child by a valid order of adoption by the respondents and has not forfeited such right by a wilful abandonment of the child, and is a suitable person to have its care and custody, there is error in the judgment awarding the custody of the child to the respondents."

We observe here that the question of unsuitability is one which must be advanced and shown by the respondent. The finding here has negatived such condition.

There is nothing that tears at the heart more pathetically than separation from a child over whom one has watched, has cared for and loved during the years until it has become a part of the very life; but the natural right of a parent, whose unfitness has not been shown, to the custody of a child given to it by a higher power is fundamental, intimately concerned with the integrity of the oldest and most sacred human institution, the home, the family; and we dare not say upon the evidence

and findings before us that social considerations or the superior suitability of another custodian should be of such paramount consideration as to defeat that right.

The judgment of the court below is

Reversed.