ROBERT FRANKLIN DELLINGER v. MRS. WILLIE CATHERINE HAYNES BOLLINGER.

(Filed 12 October, 1955.)

**1. Appeal and Error § 6c (2)—**

The want of assignment of error in the record does not warrant dismissal by the Supreme Court *ex mero motu*, since an exception to the judgment and an appeal therefrom present the questions whether the facts found support the judgment and whether any fatal error of law appears on the face of the record.

**2. Evidence § 2—**

The courts will take judicial notice of the counties comprising a judicial district at the time of the rendition of judgment, and that the resident judge was assigned by statute to hold the courts of the district during a particular term.

**3. Judges § 2a: Statutes § 10—**

Where a county is in the district of a particular resident judge at the time of the hearing of a motion in chambers and the rendition of judgment in the cause, the validity of the judgment is not affected by the fact that subsequent thereto such county is removed from the district of such judge, since Chapter 129, Session Laws of 1955, by its express terms, did not become effective until 1 July, 1955, and further, the General Assembly could not invalidate by subsequent legislation a judgment valid at the time of its entry.

**4. Appearance § 2b—**

Defendant's appearance and demurrer *ore tenus* to the petition constitutes a general appearance which waives any defect in or nonexistence of a summons.

**5. Judgments § 19—**

Where the cause comes before the court at chambers upon notice to defendant to appear prior to the filing of answer, the court, upon overruling defendant's demurrer and motion to dismiss, may not proceed to render final judgment on the merits without giving defendant an opportunity to answer, G.S. 1-399, G.S. 1-125, and such final judgment is a defect appearing on the face of the record requiring the vacation of the order.

**6. Bastards § 11: Parent and Child § 2—**

The putative father of an illegitimate child, irrespective of statute, has such interest in the child as to authorize him to maintain a suit for its custody, and also has the statutory right to maintain such proceeding, G.S. 49-1 and G.S. 49-2 being construed *in pari materia* with G.S. 50-13.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.

APPEAL by defendant from *Rudisill, J.,* in Chambers at Newton, 26 March 1955, LINCOLN.

Special proceedings to determine the custody of a child.

Plaintiff is the putative father of an illegitimate child born to the defendant in February 1952. Plaintiff filed a petition under the provisions of G.S. 50-13 in which he seeks an order awarding him custody of said child. Said petition, together with a notice to appear before Rudisill, J., on 26 March 1955, at Newton, N. C., was served upon the defendant. No summons was issued. On the return date of the notice the defendant made what purports to be a special appearance, demurred to the petition, and moved to dismiss the same for the various reasons set out in her written motion filed, among which are (1) the putative father may not maintain an action for the custody of his child, and (2) want of jurisdiction of the court for the reason that Lincoln County is not now a part of the resident district of Rudisill, J. The court heard the evidence offered in affidavit form, overruled the demurrer and motion to dismiss, and entered judgment awarding the custody of said child to the plaintiff. Defendant excepted and appealed.

*Sheldon M. Roper for petitioner appellee.*
*Bruce F. Heafner for respondent appellant.*

BARNHILL, C. J.   While the appellant sets forth in her brief numerous exceptions and assignments of error, the only exceptions contained in

the record are the exceptions (1) to the refusal of the court to sustain the demurrer *ore tenus,* (2) to the denial of defendant's motion to dismiss, and (3) to the signing of the judgment. There is no assignment of error in the record. Even so, we may not dismiss the appeal *ex mero motu.*

An exception to a judgment and an appeal therefrom present to this Court two questions, and two questions only, for decision: (1) Do the facts found support the judgment, and (2) does any fatal error of law appear upon the face of the record? *Bond v. Bond,* 235 N.C. 754, 71 S.E. 2d 53, and cases cited; *Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E. 2d 128.

The Court will take judicial notice of the fact that at the time this cause was heard, on 26 March 1955, the Sixteenth Judicial District included Lincoln County, and that Rudisill, J., was the Resident Judge of said district, and that he was assigned by statute to hold the courts of said district during the Spring Term of 1955.

Chapter 129, Session Laws of 1955, increasing the number of judicial districts and changing the boundaries thereof, by the express terms therein contained, became effective 1 July 1955. Its enactment could in no wise affect the validity of a judgment theretofore lawfully entered by a Judge of the Superior Court having jurisdiction of the parties and the subject matter of the action. The Legislature—even if it had attempted so to do—is without authority to invalidate, by subsequent legislation, a judgment which was valid at the time of its entry. Hence there is no merit in the contention of the defendant that the court was without jurisdiction to hear this cause for the reason that said Act of 1955 had been adopted by the Legislature, effective 1 July 1955, at the time the judgment herein was entered.

. Civil actions and special proceedings are begun by the issuance of summons. Here no summons was issued. Even so, this is not a fatal defect for the reason that defendant's appearance and demurrer *ore tenus* to the petition constituted a general appearance which waived any defect in or nonexistence of a summons. *Wilson v. Thaggard,* 225 N.C. 348, 34 S.E. 2d 140; *Credit Corp. v. Satterfield,* 218 N.C. 298, 10 S.E. 2d 914.

There is, however, a defect appearing on the face of the record which requires us to vacate the order entered and to remand the cause for further proceedings. The court, having overruled defendant's demurrer and motion to dismiss, proceeded to hear the evidence and to render final judgment on the merits as he found them to be, without giving the defendant an opportunity to answer. G.S. 1-399. The statute, G.S. 1-125, expressly provides that a defendant shall have thirty days after the denial of a motion such as the one here entered within which to answer. To this right defendant is now entitled.

The defendant interposed a demurrer *ore tenus* in this Court. The demurrer raises only one question for decision, to wit: Is the putative father of an illegitimate child a parent within the meaning of G.S. 50-13 so as to entitle him to institute a special proceeding to determine the custody of the child?

We have heretofore held that the mother of an illegitimate child is its natural guardian and may maintain a proceeding under G.S. 50-13 to determine its custody. *In re Cranford*, 231 N.C. 91, 56 S.E. 2d 35; *Browning v. Humphrey*, 241 N.C. 285, 84 S.E. 2d 917, and cases cited. But whether the putative father may likewise maintain such an action is a question of first impression in this jurisdiction.

At common law an illegitimate child was *nullius filius*, but it has long since been the policy of this State to recognize the relationship of parent and child as between a putative father and his illegitimate offspring and to require the putative father to maintain and support his child. We first had the old bastardy statute which was superseded by Chapter 49 of the General Statutes, which Act, by the terms thereof, is to be known as "An act concerning the support of children of parents not married to each other." G.S. 49-2 further provides that "Any parent who wilfully neglects or who refuses to support and maintain *his* or her illegitimate child shall be guilty of a misdemeanor . . ."

The word "parents" in G.S. 49-1 and the word "parent" in G.S. 49-2 and the word "parents" as used in G.S. 50-13 all relate to the rights and duties of parents in respect to their children. They are *in pari materia*. And G.S. 49-2 clearly recognizes that the putative father of an illegitimate child is now deemed to be the father thereof within the eyes of the law.

Furthermore, G.S. 50-13 provides that the procedure therein provided may be used in "controversies respecting the custody of children not provided for by this section or section 17-39 of the General Statutes of North Carolina." Certainly this provision is sufficiently broad and comprehensive to include this proceeding which is a controversy respecting the custody of a child.

Even though he may be a fit and suitable person to have the custody of his illegitimate child, perhaps it may not be said that his right thereto is paramount as in case of a father of a legitimate child. Even so, under the law he has such an interest as entitles him to seek to provide voluntarily the support and maintenance which the law will compel him to provide.

The second paragraph of G.S. 50-13 was adopted in 1949, c. 1010, S.L. 1949, and was designed (1) to meet the decision of this Court in *Phipps v. Vannoy*, 229 N.C. 629, 50 S.E. 2d 906, in which we held that the juvenile court has exclusive jurisdiction, and (2) to simplify pro-

ceedings to determine the custody of children in cases not arising under G.S. 17-39. It is, as heretofore noted, very comprehensive in its terms, as evidenced by the language, "controversies respecting the custody of children not provided for by this section or section 17-39 of the General Statutes . . ."

Aside from our statutory provisions, we are constrained to hold that the interest of a putative father in the welfare of his illegitimate offspring is sufficient to authorize him to maintain a proceeding under the provisions of G.S. 50-13 to have the child removed from environment detrimental to its welfare. In so doing, he may request the court to award the custody of the child to him so that he may provide the support and maintenance required by law.

The demurrer *ore tenus* is overruled. The order entered will be considered only as an order awarding the custody of the child *pendente lite.* The cause is remanded to the end that the defendant may have an opportunity to file an answer and plead her defenses to the petition filed by plaintiff. Thereafter, the court may hear the evidence and render such judgment as the facts found by him may justify.

Error and remanded.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.