IN THE MATTER OF MARGUERITE TRACEY JONES, MINOR

No. 728DC182

(Filed 24 May 1972)

1. **Infants § 9; Parent and Child § 6— child custody — right of parent**
    The mother of an illegitimate child is entitled as a matter of law to regain custody of the child from her aunt and uncle with whom she had left the child when she was seventeen years old, unmarried and still in school, where the mother has married and now has a stable home, and the mother and her husband are suitable and fit persons to have custody of the child.

2. **Infants § 9; Parent and Child § 6— child custody — right of parent**
    Parents, including the mother of an illegitimate child, have the legal right to have the custody of their children unless clear and cogent reasons exist for denying them this right.

3. **Infants § 9; Parent and Child § 6— best interest of child — presumption — right of parent**
    The law presumes that the best interest of a child will be served by committing it to the custody of a parent when the parent is a suitable person; this presumption is not overcome merely by showing that some third person can give the child better care and greater comforts and protection than the parent, a parent's right to custody being forfeitable only by misconduct or by other facts which substantially affect the child's welfare.

APPEAL by petitioners from *Pate, District Judge,* 9 August 1971 Session of District Court held in WAYNE County.

Custody proceedings instituted 2 December 1970 by petitioners, Lamont Richardson and his wife, Joyce Jones Richardson, for the custody of Marguerite Tracey Jones (Tracey), born 29 April 1965. (The name of the child is referred to in some parts of the record as Tracey Margaret Jones.) The child is the illegitimate daughter of Joyce Jones Richardson. Respondents are Mrs. Richardson's aunt, Mae Hines Jones, and her husband Cliff Jones.

Petitioners offered evidence tending to show the following:

Feme petitioner was seventeen years old, unmarried, and a high school senior in Jersey City, New Jersey, when she gave birth to Tracey. By going to night school she was graduated from high school in June of 1965, shortly after the birth of her daughter. Mae Jones came to feme petitioner's graduation and offered to take the infant child into her home and keep her

until the child's mother completed college. Feme petitioner agreed to this, considering it only a temporary arrangement. Accordingly, in late August of 1965, the child was taken to respondent's home in Goldsboro, North Carolina.

The child's mother enrolled in Howard University, Washington, D. C., in the fall of 1965. After studying there for a year and a half she transferred to nursing school in Newark, New Jersey, because it was nearer to her home and less expensive. The record does not show how long she remained in nursing school, but sometime thereafter she terminated and accepted employment with the Federal Reverve Board in Washington, D. C. While in Washington, D. C., feme petitioner met Lamont Richardson. They married on 31 December 1969.

Feme petitioner testified that she visited her daughter during school breaks and at vacation times. She stated: "I spent as much time with my daughter as I possibly could."

The first time respondents indicated they thought Tracey should remain with them permanently was when petitioners started establishing an apartment shortly before their marriage. A short time before this Mrs. Jones had stated that she and her husband were willing to keep the child but the decision was for feme petitioner. Since their marriage petitioners have sought custody of the child and respondents have refused to relinquish her.

Petitioners moved from Washington, D. C., to Jersey City, New Jersey, shortly after their marriage and live there now. Mr. Richardson is assistant project manager for the Jersey City Redevelopment Agency. His annual income from employment is $8,400.00. Mrs. Richardson works for the Federal Reserve Bank in New York at an annual salary of $6,600.00. However, she plans to quit work to care for her family.

Numerous interrogatories, answered under oath by various witnesses, were introduced by petitioners. One of the witnesses was Samuel C. Scott, Judge of the Municipal Court of Jersey City. These interrogatories tend to show that petitioners are of excellent character and enjoy a good reputation in their community. They live in a two-family, six-room house which they are purchasing. In addition they own rental property which has a monthly gross income of $700.00. Their home has an adequate backyard and a porch and it is located a short block from an

elementary school. A library and a hospital are nearby. The neighborhood is a desirable area in which to rear children.

Respondents offered evidence tending to show the following:

Mrs. Jones teaches school and receives an annual salary of more than $9,000.00. Mr. Jones is a brick mason. In 1970 he earned $6,841.00. Respondents accepted Tracey into their home with the understanding they would have permanent custody. They saw no need to institute adoption proceedings. Respondents have no children of their own. They love Tracey and she loves them. Respondents enrolled Tracey in kindergarten, saw to her medical needs, took her to Sunday School and church regularly, and provided her with adequate care while Mrs. Jones was out of the home teaching school. The child is healthy and well adjusted, but she appeared nervous after returning from a short visit with her mother in the summer of 1970.

Various witnesses testified as to the good character and reputation of respondents and expressed the opinion that it would be in the best interest of Tracey to remain in respondents' home.

The court entered extensive findings, including the following, which are summarized: Respondents understood from the placement of the child in their home and from conversations with the child's mother and grandmother that they were to take the child for life. They occupy and own a home in an urban renewal area of Goldsboro. The dwelling house will be relocated on its existing lot, and the lot will be enlarged to make the lot and dwelling house standard. Respondents have reared the child with abundant love and affection and have provided her with excellent care, custody, training and maintenance. The child is well developed, happy and secure. She will enter the first grade in August of 1971. Respondents are financially able to support the child and are of good moral character. The court found the petitioners' home and employment to be as described in their evidence and further "that said parties are of good character and financially able to maintain said child. . . . "

The court concluded that the interest and welfare of the child would best be promoted by awarding her custody to respondents. An order was entered to this effect and petitioners appealed.

*Connor and Vickory by C. Branson Vickory for petitioner appellant.*

*Bland & Wood by W. Powell Bland for respondent appellee.*

GRAHAM, Judge.

It has been noted often that a trial judge is probably faced with no more difficult task than that of finding the correct answer when called upon to determine the custody of a child. "Nearly always any decision he makes will produce heartaches." *In re Gibbons,* 245 N.C. 24, 95 S.E. 2d 85.

Respondents have lovingly provided for this child's every need while her care has been entrusted to them. She undoubtedly loves them and would be happy and secure in their permanent custody. The temptation is great to leave His Honor's judgment undisturbed.

On the other hand, there is nothing in the evidence to suggest that the mother does not also love the child or that the child's love and affection for her mother does not, or will not in the future, equal that which she has for respondents. Our attention is called to the fact that the mother relinquished possession of the child to respondents when the child was only a few months old. But this act should not be viewed as a rejection of the child by her mother. At that time, the mother was young and still in school. She regarded it important that she continue her education and establish a home where she could adequately care for her child. In our opinion, placing the child with Mr. and Mrs. Jones under these circumstances does not illustrate a lack of love for the child or a lack of concern by the child's mother for her welfare. Rather, it shows commendable judgment on the part of a 17-year-old unmarried girl facing maternal responsibilities before she was prepared for them.

[1] The mother now has a stable home. The findings of the trial court establish that she and her husband are suitable and fit persons. There is no evidence which would support contrary findings. Indeed, the suitability of the mother for custody of the child is not disputed. Under these circumstances, feme petitioner, as the natural mother of the child, is entitled to her custody and the trial court erred in failing to enter an order accordingly.

[2] It is well settled that parents, including the mother of an illegitimate child, have the legal right to have the custody of

their children unless clear and cogent reasons exist for denying them this right. 3 Lee, N. C. Family Law, Custody of Children, § 224. "This right is not absolute, and it may be interfered with or denied but only for the most substantial and sufficient reasons, and is subject to judicial control only when the interests and welfare of the children clearly require it." *James v. Pretlow,* 242 N.C. 102, 104, 86 S.E. 2d 759, 761.

The case of *In re Shelton,* 203 N.C. 75, 164 S.E. 332, presented a situation analogous to the one at hand. There, the mother took her illegitimate son to live with respondents. The mother left after six months, leaving her child with respondents. The mother thereafter married, established a home, and sought custody. The trial court concluded that it was in the best interest of the child to remain in the home of respondents and that respondents were better prepared to care for, educate and maintain said child. The Supreme Court reversed the judgment and ordered custody awarded to petitioner. In doing so the court stated: "It is well settled as the law of this State that the mother of an illegitimate child, if a suitable person, is entitled to the care and custody of the child, even though there be others who are more suitable."

The case of *In re Cranford,* 231 N.C. 91, 56 S.E. 2d 35, is also similar. There, petitioner went with her illegitimate child to live with her aunt. Thereafter, petitioner married and moved, but left the child with her aunt, asserting, according to the aunt, that she waived right to further claim to the child. The trial court found that the mother and aunt were of good character and that both homes were fit and proper places for the child. Custody was awarded to the aunt. The Supreme Court reversed, holding that the mother was entitled to custody as a matter of law, even though in entrusting her child to the custody of her aunt she may have stated that she waived right to further claim. See also *Latham v. Ellis,* 116 N.C. 30, 20 S.E. 1012.

In *Cranford,* Justice Seawell, speaking for the court, made a statement which appears particularly applicable here:

"There is nothing that tears at the heart more pathetically than separation from a child over whom one has watched, has cared for and loved during the years until it has become a part of the very life; but the natural right of a parent, whose unfitness has not been shown, to the

custody of a child given to it by a higher power is fundamental, intimately concerned with the integrity of the oldest and most sacred human institution, the home, the family; and we dare not say upon the evidence and findings before us that social considerations or the superior suitability of another custodian should be of such paramount consideration as to defeat that right." 231 N.C. at 95, 56 S.E. 2d at 39.

It is apparent in the instant case that the trial judge was of the opinion the interest and welfare of the child would best be promoted by awarding her custody to respondents. G.S. 50-13.2. Were this a contest between persons equally entitled to the child's custody, this exercise of discretion by the court would be sustained. However, there has been no adoption by respondents and they have no legal right to possession of the child. *In re Cranford, supra; In re Shelton, supra.*

[3]   The law presumes that the best interest of a child will be served by committing it to the custody of a parent, when the parent is a suitable person. *In re Hughes,* 254 N.C. 434, 119 S.E. 2d 189. This presumption is not overcome merely by showing that some third person can give the child better care and greater comforts and protection than the parent, a parent's right to custody of a child being forfeitable only by misconduct or by other facts which substantially affect the child's welfare. 3 Lee, N. C. Family Law, Custody of Children, § 224.

We conclude that the child's natural mother is entitled to her custody, no facts having been shown which would overcome the presumption that this would be in the best interest of the child.

Reversed.

Judges MORRIS and VAUGHN concur.