MELVIN D. CONLEY, PETITIONER v. CHRISTINE JOHNSON, RESPONDENT

No. 7425DC672

(Filed 4 December 1974)

1. **Bastards § 10.5— paternity action — right of reputed father to bring**

    A reputed father of an illegitimate child can bring a civil action to establish paternity, and upon establishing paternity, the rights, duties and obligations are the same as if the child were legitimate. G.S. 49-14; G.S. 49-15.

2. **Bastards § 11— father of illegitimate child as parent — right to bring custody action**

    A father of an illegitimate child is a "parent" within the meaning of G.S. 50-13.1 and is therefore entitled to bring an action for custody of the child.

3. **Bastards § 11— visitation privileges granted to reputed father**

    The district court was authorized to grant the father of an illegitimate child visitation privileges and to punish the mother for refusing to allow the father to visit the child pursuant to an order previously entered.

APPEAL by respondent from *Ingle, Judge,* 1 April 1974 Session of District Court held in BURKE County.

Respondent challenges the legality of (1) an order granting petitioner certain visitation privileges with the illegitimate child of the parties, and (2) an order adjudging her in contempt of court for refusing to comply with the former order. The parties stipulated as follows:

(1) Petitioner is the father and respondent is the mother of Betty Ann Johnson who was born out of wedlock on 10 March 1971.

(2) Pursuant to an action instituted in the criminal court, petitioner is required to pay $15.00 per week toward the support of Betty Ann.

(3) Respondent has refused, and continues to refuse, to allow petitioner to see or visit with the child.

(4) On 28 January 1974, petitioner instituted this proceeding, alleging that he is the father of Betty Ann, that he has been ordered to contribute to her support, and that respondent has refused to permit him to visit the child. He asked the court to hold a hearing and grant him reasonable visitation privileges.

(5) On 22 February 1974, following a hearing, Judge Duncan entered an order finding that petitioner is the father of the child, that he is a fit, suitable and proper person to have reasonable visitation privileges with the child, and provided that the child be allowed to visit with petitioner at certain specified times.

(6) Respondent refused to permit the child to visit with petitioner as provided in the order.

(7) On 19 March 1974, petitioner filed a motion in the cause alleging that respondent would not allow him to visit the child as stated in the order and that due to this violation, the court should issue process requiring respondent to show cause why she should not be adjudged in contempt of Judge Duncan's order.

(8) Following notice to respondent and a hearing on the motion, the court entered an order finding and adjudging respondent in willful contempt of Judge Duncan's order, and requiring that she be imprisoned until she complies with the order " . . . by turning the child over to the petitioner, as provided in said Order."

Respondent appealed.

*Patton, Starnes & Thompson, P.A., by Stephen T. Daniel, for petitioner appellee.*

*John H. McMurray, by C. Gary Triggs, for respondent appellant.*

BRITT, Judge.

Respondent contends that the challenged orders are invalid for the reason that the common law prevails in this State and under the common law the father of an illegitimate child is not entitled to visitation privileges absent consent of the mother. While we agree that ordinarily the common law prevails in this State, the same statute that makes that provision also provides " . . . and which has not been otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete . . . . " G.S. 4-1. We think the principle argued by respondent has been abrogated by statutes as well as case law.

[1] In 1967 our General Assembly enacted G.S. 49-14, 15, and 16, which abrogate the common law. 3 R. Lee, North Carolina

Family Law § 251 (Supp. 1974). Under G.S. 49-14, a reputed father of an illegitimate child can bring a civil action to establish paternity. Upon establishing paternity under G.S. 49-14, " . . . the rights, duties, and obligations of the mother and the father so established, with regard to support and custody of the child, shall be the same, and may be determined and enforced in the same manner, *as if the child were the legitimate child of such father* and mother. . . . " G.S. 49-15. (Emphasis ours.) Note, however, that under G.S. 49-14(a), " . . . (s)uch establishment of paternity shall not have the effect of legitimation," which is established under G.S. 49-10.

[2]  G.S. 50-13.1 states that "(a)ny parent, . . . claiming the right to custody of a minor child may institute an action . . . for the custody of such child . . . . " We find nothing in this section which limits custody proceedings to the parent of a legitimate child. In *Dellinger v. Bollinger,* 242 N.C. 696, 89 S.E. 2d 592 (1955), the court applied former G.S. 50-13 and held that the father of an illegitimate child was a "parent" within the meaning of that statute so as to entitle him to bring an action for custody of the child. *Accord, Jolly v. Queen,* 264 N.C. 711, 142 S.E. 2d 592 (1965).

G.S. 50-13.2(b) authorizes the court to award to such person " . . . as will in the opinion of the judge best promote the interest and welfare of the child." G.S. 50-13.5(h) vests jurisdiction in the district court in actions or proceedings for child custody and support and G.S. 50-13.5(i) grants the district court jurisdiction to award or deny "parental" visitation privileges. Irrespective of the statutes (G.S. 50-13.1, et seq.), it appears that the definition of "parent" in *Dellinger* includes both legitimate and illegitimate parents. If either can be awarded custody, either should be allowed visitation privileges.

[3]  We hold that the district court was authorized to grant petitioner visitation privileges and to punish respondent for refusing to allow petitioner to visit his child.

Affirmed.

Judges CAMPBELL and VAUGHN concur.