WAYNE WILSON AND MINNIE JANE WILSON v. BRENDA ABSHER W. WILLIAMS

No. 7823DC1064

(Filed 17 July 1979)

**Infants § 6.3— custody awarded to grandparents—father killed by mother's subsequent husband**

Though the trial court did not find defendant mother to be unfit to have custody of her child, the court nevertheless could properly award custody of the child to plaintiff paternal grandparents where the court found that the child would be adversely affected by being placed with his mother since she was still married to and still maintained a relationship with the man who killed the child's father.

APPEAL by defendant from *Osborne, Judge.* Judgment entered 20 July 1978 in District Court, WILKES County. Heard in the Court of Appeals 28 June 1979.

The plaintiffs seek custody of Richard Allen Wilson, their 12-year-old grandchild. It appears from their complaint that their son Jimmy was married to defendant in 1965 and separated from her in 1969; that between 1969 and Jimmy's remarriage in 1973, Richard remained almost continually with the plaintiffs; and that between Jimmy's remarriage in 1973 and his death in 1976, Richard lived with his father and his father's new wife next door to the plaintiffs. Pursuant to an agreement between Jimmy and the defendant, Richard spent summers with defendant. At the end of the summer of 1976 the defendant refused to return Richard, and when Jimmy went to defendant's home to pick up the child he was shot and killed by defendant's present husband. On 15 December 1976 the court placed Richard in the plaintiffs' custody pending the disposition of the murder charges against defendant's husband.

On 8 June 1978 defendant filed a motion in the cause, stating that the murder charges against her husband have been disposed of and that he is now in prison, and seeking a hearing on custody. The following evidence was presented at the hearing: Defendant is a medical secretary, with a take-home income of approximately $200 per week. She lives in a three-bedroom trailer in Chapel Hill with the four-year-old child of her second marriage. She visits her husband in prison about every other weekend. Since Richard

went to live with the plaintiffs, her relationship with him has become very poor. He no longer calls her mother, but calls her by her first name. When she goes to visit him at the plaintiffs' house she is not allowed to take him outside the house, or to be alone with him, though she feels that sometimes he would like to be alone with her. Defendant presented witnesses who testified that she is a fit person to have custody of the child.

Plaintiffs presented evidence that when Richard came to live with them he was on medication for seizures that made him hard to keep awake. Since his medication has been reduced, he has become his normal self again. He has friends and cousins in the plaintiffs' area that he plays with often. Plaintiff grandfather never interferes with Richard's communication with defendant. Richard has said to his grandfather that he cannot live with his mother after what happened to his daddy.

Plaintiff grandmother testified that she spends all of her time with Richard except when he is in school. They ride bicycles and play ball, go hiking and fishing. Richard makes good grades and is well-behaved. In March 1978 he got a letter and a call from his mother after which he was very upset and cried and started vomiting. He thought she was blaming him for his father's death. Richard has expressed his desire to continue living with his grandparents. Asked "Has either of you encouraged him to refer to her as mother?" plaintiff replied, "No, sir, I told him she's his mother and to call her whatever is in his heart. I asked him not to stay with her by hisself [sic] when she comes up there. He has asked me to stay in the room with them when she came up."

On rebuttal, defendant testified that Richard had not been withdrawn or disturbed when he went to live with plaintiffs, but she felt that now he had been brainwashed against her.

The court talked with Richard in private. The substance of their conversation does not appear. However, the court found as fact that "said minor has a strong desire to reside in the home of his grandparents and that he does not wish to either live with his mother or to visit with the mother in her home at the present time. . . . Said minor indicated that he would be willing to visit with his mother in the [plaintiffs'] area if she should desire to visit with him." The court found further that "[s]aid minor child has strong emotional feelings concerning the shooting death of his

father by Mr. Williams, and the Court is of the opinion that inasmuch as the mother still maintains a relationship with Mr. Williams that this would be extremely upsetting to said minor should he reside in the home of the mother." The court awarded custody of Richard to the plaintiffs, with the proviso that defendant be allowed an opportunity to establish a better relationship with her son. The court further ordered that a new hearing might be held in the future if Richard expressed a desire to live with his mother. Defendant appeals.

   *E. James Moore for plaintiff appellees.*

   *John E. Hall and William C. Warden, Jr. for defendant appellant.*

   ARNOLD, Judge.

   Defendant argues that, as she has not been found to be unfit to have custody of Richard, it was error for the trial court to award custody to the grandparents.

   The court made no finding as to defendant's fitness to have custody of her son. However, defendant is correct in her assertion that there is no evidence in the record that she is unfit. And it is the general rule that where one parent is dead, the surviving parent has a right to custody of their minor children, a right which should be denied only for "the most substantial" reasons. *James v. Pretlow*, 242 N.C. 102, 104, 86 S.E. 2d 759, 761 (1955). The trial court in the present case apparently found that defendant's continuing relationship with the man who killed Richard's father was such a substantial reason, and it is this decision we must review.

   The parties cite to us a number of cases, none of which is on point. Defendant relies upon *In re Jones*, 14 N.C. App. 334, 188 S.E. 2d 580 (1972), but in that case there appeared no circumstance which would justify withholding the child from the mother's custody. Plaintiffs' reliance is placed upon a number of cases in which the natural parent was found to be unfit, *e.g. In re Craigo*, 266 N.C. 92, 145 S.E. 2d 376 (1965); *Holmes v. Sanders*, 246 N.C. 200, 97 S.E. 2d 683 (1957); *In re Edwards*, 25 N.C. App. 608, 214 S.E. 2d 215 (1975); *Brandon v. Brandon*, 10 N.C. App. 457, 179 S.E. 2d 177 (1971); *In re Stancil*, 10 N.C. App. 545, 179 S.E. 2d 844 (1971), which is not the case here.

Electric Co. v. Hospital Corp.

In custody determinations, the best interest of the child is the overriding factor. *See* G.S. 50-13.2(a). And while it is presumed that it is in the child's best interest to be placed with a natural parent, this presumption may be rebutted by a circumstance which would substantially affect the child. *In re Jones, supra.* Wide discretion is vested in the trial court in these matters, since he has the opportunity to see the parties and hear the witnesses, *Sheppard v. Sheppard,* 38 N.C. App. 712, 248 S.E. 2d 871 (1978), and his decision will not be disturbed in the absence of an abuse of discretion.

We can find no abuse of discretion here. Both parties are apparently quite fit to have custody of the child. If this were the case without more, defendant would be entitled to custody. However, the court has found, not without reason, that Richard would be adversely affected by being placed with his mother at this time, since she is still involved with the man who killed his father. We cannot say that this is not a circumstance sufficient to "substantially affect the child's welfare." *In re Jones, supra* at 339, 188 S.E. 2d at 583. We uphold the court's decision, and we commend his efforts to insure that defendant has every reasonable opportunity to improve her relationship with her son.

The trial court's conclusions are adequately supported by the facts, and his order is

Affirmed.

Judges HEDRICK and VAUGHN concur.