DURHAM COUNTY DEPARTMENT OF SOCIAL SERVICES AND MARGARET THOMAS v. JIMMIE WILLIAMS

No. 8014DC764

(Filed 19 May 1981)

**Bastards § 10; Parent and Child § 7 — voluntary child support agreement — approval by court — necessity for mother's affirmation of paternity**

    The district court had no jurisdiction to enter an order approving defendant's voluntary agreement for support of an illegitimate child where defendant's acknowledgment of paternity was not simultaneously accompanied by a sworn affirmation of paternity by the child's mother as required by G.S. 110-132(a).

APPEAL by defendant from *LaBarre, Judge*. Order entered 28 April 1980 in District Court, DURHAM County. Heard in the Court of Appeals 3 March 1981.

Defendant executed a voluntary support agreement and acknowledgment of paternity of Genelle Renee Mitchell on 24 September 1979. The District Court approved the support agreement on 2 October 1979. Defendant's subsequent motions to set aside the agreement and to dismiss the court's order of approval for lack of jurisdiction were denied.

The facts are as follows. On 24 September 1979, defendant executed a voluntary support agreement at the Durham County Department of Social Services. He acknowledged that he was the responsible parent of Genelle Renee Mitchell, born 3 February 1972, and promised to pay $25.00 a week for her support. Defendant also signed, on the same day, a formal document acknowledging his paternity of the child.

The district court entered an order approving the support agreement on 2 October 1979. Two days later, defendant filed a

motion to set aside the agreement and judicial order of approval primarily on the following grounds:

That the Department of Social Services failed to inform the defendant that he could not be prosecuted for being the reputed father of the minor child named in this proceeding under the provisions of GS 49-4(1) in that the date of birth of the minor child is February 3, 1972 and prosecution is barred after three years from the date of birth.

That the paternity of the child named in the agreement had not been judicially determined within three years next after the birth as required by GS 49-4(2). . . .

That the defendant was not informed by a representative of the plaintiff that he could not be prosecuted as a reputed father where he had not acknowledged paternity by payments for support within three years after birth as provided by GS 49-4(3).

That the representative of the plaintiff failed to inform the defendant that he was not a responsible parent as defined by GS 110-129(3).

That the defendant was expressly informed by a representative of the plaintiff that he had no choice but to sign said agreement if he desired to avoid substantial cost and back payments.

Pending a determination of this motion, the court ordered a stay of the provisions of the agreement requiring defendant to pay support for the minor child. Subsequently, on 17 March 1980, defendant moved to dismiss Judge LaBarre's order because "the Court was without jurisdiction to enter the Order in that the agreement based upon the Acknowledgment of Paternity was invalid because there did not appear in the record a written Affirmation of Paternity by the natural mother, as expressly required by G.S. 110-132(a)." The motion to dismiss was denied, and the court proceeded to receive evidence from both sides on defendant's original motion to set aside the agreement.

In sum, defendant testified that he had never acknowledged that he was the father of the child, that he had never paid support for the child and that the mother, Margaret Thomas, had never made demands upon him for child support. He said he could

not read or write and that even though the Department's representative read the papers to him, he did not understand what he was doing when he signed the agreement. He, nonetheless, admitted the possibility that he "could be" the father of the child. Defendant, however, introduced as an exhibit the birth certificate of Genelle Renee Mitchell which stated her birth date as 3 February 1972 and the name of her father as William Mitchell.

Plaintiffs first introduced into evidence a document, executed by the mother, on 9 October 1979, entitled "Affirmation of Paternity" which included her sworn statement that defendant was the natural father of Genelle Renee Mitchell. Ms. Thomas then testified that defendant was, in fact, the father of the child and that she had named her former husband, who had divorced her in 1970, as the father on the birth certificate to avoid embarrassment to herself and the child. Janet Sparks, an employee of the Department, admitted that she had told defendant that if the court concluded he was the child's father, he might be ordered to make back payments for her support. She further said, however, that defendant told her that he was the father and that he voluntarily signed the support agreement and acknowledgment of paternity with full understanding of its contents.

Defendant now appeals from the order entered 28 April 1980 in which Judge LaBarre concluded, among other things, that: (1) he was the father of Genelle Renee Mitchell; (2) he voluntarily and knowingly executed the acknowledgment of paternity and support agreement, free from duress or coercion; (3) the belated execution of an affirmation of paternity by the mother, after the support agreement was approved and accepted by the court, was not fatal to the validity of the agreement; and (4) the support agreement and acknowledgment of paternity were valid and binding upon defendant from the date of entry.

*Thomas Russell Odom, for plaintiff appellee.*

*C. Horton Poe, Jr., for defendant appellant.*

VAUGHN, Judge.

A single issue is dispositive of this appeal: whether the district court had jurisdiction to enter the order of 2 October

1979, approving the support agreement when defendant's written acknowledgment of paternity was not simultaneously accompanied by the mother's sworn affirmation of paternity as required by G.S. 110-132(a). We conclude that the mother's written affirmation of paternity was a prerequisite to the court's acquisition of jurisdiction in these circumstances and reverse Judge LaBarre's subsequent order of 28 April 1980 confirming the validity and binding effect of the support agreement executed by defendant.

At the outset, we note that one of the express purposes of Article 9 of Chapter 110 of the General Statutes is "to provide for enforcement of the responsible parent's obligation to furnish support" for his or her child. G.S. 110-128. It is, therefore, at once clear that the provisions of Chapter 110 have no application, and there is no enforceable duty to support a child under that Chapter, until somebody is determined to be a "responsible parent." A responsible parent is "the natural or adoptive parent of a dependent child *who has the legal duty to support said child* and includes the father of an illegitimate child." G.S. 110-129(3) (Emphasis added). In this case, it appears that G.S. 110-132 provided the sole means for establishing and enforcing a *legal duty* on defendant's part to support Genelle Renee Mitchell.[1] It is elemental then that full compliance with the statutory requirements was necessary to confer proper jurisdiction upon the district court for the entry of an order approving the voluntary support agreement so as to make it "enforceable and subject to modification in the same manner as is provided by law for [support] orders of the court. . . ." G.S. 110-132(a).

G.S. 110-132(a), in pertinent part, provides the following:

---

1. Although Judge LaBarre found as a fact that defendant "provided limited support, gifts and remembrances at birthdays and holidays" until October 1979 in his order of 28 April 1980, he did not conclude, as a matter of law, that defendant had acknowledged his paternity of the child by making payments for her support. Thus, it seems that defendant could not have been prosecuted for wilful nonsupport of an illegitimate child because (1) three years had elapsed since the child's birth (3 February 1972); (2) his paternity had not been judicially determined within that period; and (3) he had not acknowledged his paternity by making support payments during the first three years of the child's life. G.S. 49-4(1)-(3).

the written acknowledgment of paternity executed by the
putative father of the dependent child when accompanied by
a written affirmation of paternity executed and sworn to by
the mother of the dependent child and filed with and approv-
ed by a judge of the district court . . . shall have the same
force and effect as a judgment of that court; and a written
agreement to support said child by periodic payments . . .
when acknowledged before a certifying officer or notary
public . . . filed with, and approved by a judge of the district
court, at any time, shall have the same force and effect,
retroactively or prospectively, in accordance with the terms
of said agreement, as an order of support entered by that
court. . . .

This statute, in effect, makes a father's voluntary written
acknowledgment of paternity, and agreement to support his il-
legitimate child, a binding and fully enforceable substitute for a
judicial determination of paternity and order of support. Three
requirements, however, must be met to achieve this result: (1) the
father must, of course, acknowledge his paternity of the child in
writing; (2) the mother must also affirm in writing that he is, in
fact, the natural father of the child; and (3) these documents must
be filed with and approved by a district court. With respect to
the jurisdictional issue at bar, the pivotal term to be construed
within the stated requirements of G.S. 110-132(a) is the word "ac-
companied."

In plain language, G.S. 110-132(a) permits the court to ap-
prove a father's acknowledgment of paternity when it is "accom-
panied" by the mother's corresponding statement of his paternity.
The accepted meaning of the word "accompany" is "to go along
with" or "to exist or occur in conjunction or association with."
Webster's Third New International Dictionary, at 12 (1968). We
must conclude, on this record, that the mother's affirmation of
paternity did not accompany the father's acknowledgment in the
manner contemplated by the statute. When Judge LaBarre
entered the initial order approving defendant's acknowledgment
of paternity and his agreement to support the child on 2 October
1979, the mother had not executed (or filed) her own written affir-
mation of defendant's paternity. This document was not executed
until 9 October 1979, seven days after the court entered its order
of approval and five days after defendant moved to set aside the

agreement and court order.[2] In these circumstances, we simply cannot say that the mother's affirmation of paternity "accompanied" that of the father when the judge entered the order approving defendant's acknowledgment of paternity and the support agreement. Moreover, the contents of the acknowledgment of paternity form itself clearly indicate that the parties understood that the execution and filing of the mother's affirmation of paternity was a prerequisite to the court's exercise of jurisdiction to approve the documents submitted by defendant in this case. The form signed by defendant included the following statement:

> I understand that this written Acknowledgment of Paternity shall have the same force and effect as a judgment of the District Court as provided in NCGS Chapter 110 *when accompanied by the sworn, written Affirmation of Paternity by the natural mother named above* and filed with the Clerk of Superior Court and approved by the District Judge. (Emphasis added.)

In sum, we are compelled to hold that the court had no jurisdiction to accept or enforce defendant's acknowledgment of paternity under G.S. 110-132 on 2 October 1979 because it was not *simultaneously* supported by the mother's written affirmation of paternity.[3]

The Department and the mother, nonetheless, argue that the court, even if it did not have jurisdiction to approve defendant's acknowledgment of paternity under G.S. 110-132(a), still had jurisdiction to enter a judgment accepting the voluntary support agreement in accordance with G.S. 110-133. We disagree.

---

2. We would also observe that the record does not show that the mother's affirmation, once executed, was ever presented to the district court for the express purpose of fulfilling the requirements of G.S. 110-132(a) with respect to the order entered on 2 October 1979. Rather, her affirmation was only filed as an exhibit in the hearing on defendant's motion to set aside the court order of approval on 17 March 1980.

3. It occurs to us that any other conclusion would create a curious result indeed. It is certainly true that the statutory requirement for the filing of the mother's written affirmation of paternity is intended to assure that men only become legally obligated to fulfill those "responsibilities" which they did, in fact, create and accept. It is equally true, however, that this requirement protects the mother and child from unfounded, and uninvited, intrusions into the independence and privacy of their own lives. Otherwise, a man of generous heart might simply declare his paternity of a child unilaterally and easily file for a court order approving his acknowledgment and agreement to support a child that is not his.

G.S. 110-133 provides a mechanism for the judicial enforcement and modification of a written agreement "executed by the responsible parent" to support his or her dependent child. In the instant case, "responsible parent" is the critical statutory phrase. We have already stated that a responsible parent is one "who has the legal duty to support" a dependent child, G.S. 110-129(3), and that defendant's legal duty to support Genelle Renee Mitchell had to be established under the provisions of G.S. 110-132(a). Here, a legal duty to support the child on defendant's part could not exist until his acknowledgment of paternity was accompanied by the mother's affirmation of the same and approved by the court. Thus, defendant was not a "responsible parent," and the court had no authority to enter an order approving the support agreement under G.S. 110-133.

Defendant's motion to dismiss the order of 2 October 1979 for lack of jurisdiction should have been granted, and the order appealed from is reversed.

Reversed and remanded.

Judge WELLS and BECTON concur.