MICHELLE R. BROWN, Plaintiff v. SCOTTIE K. SMITH, Defendant

No. COA99-304

(Filed 21 March 2000)

### 1. Paternity— sexual encounters—clear, cogent, and convincing evidence

The trial court did not err in a child support case by concluding that defendant is the biological father of plaintiff's child, based on the findings that the parties' sexual encounters during the pertinent period were sufficient to result in such conception, because the trial court found plaintiff established by clear, cogent, and convincing evidence, as required by N.C.G.S. § 49-14, that defendant is the father since: (1) an expert at trial testified the sexual relations of the parties were consistent with conception of a child and with a pregnancy which came to term on the pertinent date; (2) plaintiff testified at trial that she did not have sexual contact with any other man in 1990 or 1991; and (3) exhibits at trial indicated the child bears a strong resemblance to defendant.

### 2. Paternity— genetic marker testing—admission

Even though defendant made a written objection to the presumption of paternity relevant to genetic marker testing as required by N.C.G.S. § 8-50.1(b1)(4) based on the theory that the lab conducting the test determined the prior probability to be .5 instead of 0 and the record does not reveal a ruling on this objection, the trial court did not err in a child support case by admitting into evidence the test which determined a 99.91 percent probability that defendant is the father because an expert testified that paternity by defendant was a factual possibility and it would have been error to assign 0 as the prior probability of paternity.

Appeal by defendant from orders entered 18 March 1997 and 14 December 1998 by Judge Thomas G. Foster and Judge Joseph E. Turner, respectively, in Guilford County District Court. Heard in the Court of Appeals 8 December 1999.

*Gabriel, Berry & Weston, by M. Douglas Berry, for the plaintiff-appellee.*

*Carol A. Simpson for the defendant-appellant.*

**BROWN v. SMITH**

[137 N.C. App. 160 (2000)]

LEWIS, Judge.

On 19 October 1995, plaintiff filed a complaint seeking custody of and support for her minor child, Luke Thomas Brown, born 14 October 1991. Plaintiff later amended the complaint to include a demand that defendant be adjudicated the biological father of the child and that he be required to pay expenses incident to the pregnancy and birth. On 8 April 1996, defendant filed an answer denying the allegations of the amended complaint.

On 15 November 1996, upon stipulation of the parties, the trial court entered partial summary judgment for defendant as to pregnancy, birth and any other expenses incurred for the support of the child prior to 23 October 1992 on the ground that those claims were barred by the statute of limitations. Following a bench trial, the court entered an order on 18 March 1997 declaring defendant to be the father of the minor child. On 14 December 1998, the court entered an order requiring defendant to pay child support. Defendant appeals from both the 1997 and 1998 orders.

[1] Defendant first argues the evidence does not support the trial court's conclusion that defendant is the biological father of Luke Thomas Brown. The duty of a putative father to support his illegitimate child is predicated on the judicial establishment of his paternity with respect to such child pursuant to N.C. Gen. Stat. § 49-14. G.S. 49-14(b) provides that at trial, the plaintiff must establish by clear, cogent and convincing evidence that defendant is the father of the minor child.

Where the legislature has set forth the weight of evidence required in the trial court to establish paternity, as it has done in G.S. 49-14(b), our only function on appeal is to determine whether there is competent evidence in the record to support the facts found by the court and whether the facts found support the conclusions of law reached by the court. *Nash County Dept. of Social Services v. Beamon*, 126 N.C. App. 536, 539, 485 S.E.2d 851, 852, *disc. review denied*, 347 N.C. 268, 493 S.E.2d 655 (1997). " 'It is for the trier of fact to determine whether evidence offered in a particular case is clear, cogent, and convincing.' " *Id.* (quoting *In re Underwood*, 38 N.C. App. 344, 347, 247 S.E.2d 778, 781 (1978)).

As in this case, where the trial court sits as both finder of fact and arbiter of law, it is within the court's discretion to consider some, none or all of the evidence, and to determine the appropriate weight

to place on the testimony. *Id.* Thus, if there is competent evidence to support the trial court's findings of fact and conclusions of law, the same are binding on appeal even in the presence of evidence to the contrary. *Newland v. Newland,* 129 N.C. App. 418, 420, 498 S.E.2d 855, 857 (1998).

The defendant contests the trial court's findings that the most likely time of conception would have been during the latter part of January to approximately 4 February 1991, and that the parties' sexual encounters during this time were sufficient to result in such conception. Indeed, an expert at trial testified that the sexual relations of the parties were consistent with conception of a child and with a pregnancy which came to term on or about 14 October 1991. The plaintiff testified at trial that she had sexual contact with no man other than defendant either in 1990 or 1991. Further, exhibits at trial indicate that Luke Thomas Brown bears a strong resemblance to defendant. This evidence is competent to support the facts found by the trial court which defendant has challenged. It is apparent the court found the plaintiff's testimony to be clear, cogent and convincing evidence sufficient to conclude that defendant is the father of Luke Thomas Brown.

[2] In his second argument defendant contests the trial court's admission of the genetic marker test which determined a 99.91 percent probability that defendant is the father of Luke Thomas Brown. Although the trial court stated in its 1997 order that paternity by the defendant was established even without this DNA analysis, because the evidence was admitted by the trial court we address defendant's argument. Specifically, defendant argues the trial court should not have applied the presumption of paternity relevant to genetic marker testing set forth in N.C. Gen. Stat. § 8-50.1(b1)(4). G.S. 8-50.1(b1)(4) provides:

(b1) . . . Any party objecting to or contesting the procedures or results of the blood or genetic marker tests shall file with the court written objections setting forth the basis for the objections and shall serve copies thereof upon all other parties *not less than 10 days prior to any hearing at which the results may be introduced into evidence* . . . If no objections are filed within the time and manner prescribed, the test results are *admissible* as evidence of paternity without the need for foundation testimony or other proof of authenticity or accuracy. The results of the blood or genetic marker tests shall have the following effect:

. . . .

(4) If the experts conclude that the genetic tests show that the alleged parent is not excluded and that the probability of the alleged parent's parentage is ninety-seven percent (97%) or higher, the alleged parent is presumed to be the parent and this evidence shall be admitted. This presumption may be rebutted only by clear, cogent, and convincing evidence.

(emphasis added). Defendant made written objection to the admissibility of this test within the time prescribed by G.S. 8-50.1(b1), but contends the trial court never ruled on this objection. In its order, the trial court concluded the parties stipulated to the admissibility of the genetic marker test and therefore admitted it into evidence. We have found neither a ruling as to defendant's written objection nor any stipulation to admit this evidence in the record, yet we conclude the test was properly admitted.

Defendant argues that the genetic marker test in this case was inadmissible because the lab conducting the test determined the prior probability to be .5 when it should have been 0. Plaintiff submitted an affidavit by an expert in paternity testing, which explains that the "prior probability," in a paternity testing context, is a numerical representation of the nature and value of the non-genetic evidence. In further explaining prior probability, the affidavit states:

Its value is used in the conversion of the combined paternity index into the probability of paternity. It is typically expressed as a number between 0 and 1, with 0 indicating that paternity is factually impossible, and 1 indicating that paternity is factually certain. A neutral assessment of the non-genetic evidence would result in a prior probability of 0.5. This would give equal weight to paternity and non-paternity from a non-genetic aspect. Most, if not all, laboratories in the United States use a prior probability of 0.5 in calculating the genetic probability of paternity.

Case law supports this testimony. See *Cole v. Cole*, 74 N.C. App. 247, 254, 328 S.E.2d 446, 450, *aff'd* 314 N.C. 660, 335 S.E.2d 897 (1985) ("In paternity cases, where the defendant has not been previously excluded as the father, and where 50% is used as the prior probability, the Bayes Theorem ensures that every alleged father is 'probably' the father, *i.e.*, the blood test results only improve upon the 50% prior probability of paternity"); *Griffith v. State*, 976 S.W.2d 241, 245 (Ct. App. Texas 1998) (In genetic testing, "courts in the United States typically use a .5 or 50% prior probability because it is a neutral probability . . . [;] this calculation [is] a generally accepted principle, and

[is] standard methodology in parentage testing, having been used for twenty or thirty years.").

Because there is expert testimony in this case indicating that paternity by defendant was a factual *possibility*, it would have been error to assign 0 as the prior probability of paternity. We reject defendant's argument that the genetic marker test in this case was inadmissible, and conclude that the court properly applied the presumption of parentage pursuant to G.S. 8-50.1(b1)(4).

Affirmed.

Judges WYNN and MARTIN concur.