DANIEL FABRICIO ROSERO, Plaintiff-Appellee v. LISA BLAKE,
Defendant-Appellant

No. COA01-350

No. COA01-483

(Filed 21 May 2002)

**1. Appeal and Error— appeal of child custody order—subsequent motion in trial court for injunction**

The trial court in a child custody action properly determined that it was without jurisdiction to grant defendant's motion for an injunction which was directly related to and would have affected a custody order that was on appeal. While the trial court's duty to protect the child's welfare continues pending the outcome of the appeal, N.C.G.S. § 1-294 provides that appeal of a judgment stays all further proceedings in the trial court upon the matter embraced therein.

**2. Child Support, Custody, and Visitation— custody of child never legitimated—common law presumption**

The trial court incorrectly applied the best interest of the child analysis in a child custody action where the parents never married, plaintiff-father acknowledged paternity and maintained contact with the child, defendant remained a single mother with family support, and plaintiff sought custody after marrying and moving to North Carolina. There are significant differences between the statutory procedures governing the legitimation of a child and those for acknowledging paternity and agreeing to provide child support.

Judge Walker concurring in part and dissenting in part.

Appeal by defendant from order entered 2 January 2001 by Judge Anne Salisbury and from order entered 26 January 2001 by Judge Paul Gessner in District Court, Wake County. Heard in the Court of Appeals 23 January 2002.

*Kathleen Murphy for plaintiff-appellee.*

*Sally H. Scherer for defendant-appellant.*

McGEE, Judge.

Defendant appeals an order filed 2 January 2001 granting primary legal custody of the parties' minor child to plaintiff. Defendant further

appeals an order filed 26 January 2001 dismissing her motion for a protective order for lack of subject matter jurisdiction.

Plaintiff and defendant are the natural parents of Kayla Alexandria Rosero (Kayla), who was born on 20 March 1996. The parties had a brief relationship in 1995, while plaintiff was living in North Carolina. In December of that year, plaintiff moved to Oklahoma. After Kayla's birth, plaintiff agreed to submit to a paternity test which confirmed that he was Kayla's biological father. Plaintiff acknowledged paternity by signing a "Father's Acknowledgment of Paternity" form prepared in accordance with N.C. Gen. Stat. § 110-132 on 3 March 1997. The parties agreed that Kayla would remain in defendant's care, where she had lived all her life, and that plaintiff would provide child support.

During the next three years, Kayla visited with plaintiff and his wife on several occasions, including visits to Oklahoma for a long weekend, or for a period of two or three weeks. Plaintiff maintained contact with Kayla through letters, telephone calls, and visits when he traveled to North Carolina.

Defendant is also the mother of two minor sons. The boys' father, Clea Johnson, continues to have contact with his sons and has developed a relationship with Kayla. Kayla often refers to him as "daddy Clea." Defendant's mother and grandmother assist her in caring for the three children. Defendant's mother is employed at the daycare center where Kayla is enrolled and cares for Kayla when defendant is at work or away.

Plaintiff filed this action seeking custody of Kayla on 22 March 2000, while he was still living in Oklahoma. Defendant responded and filed a counterclaim for custody, alleging that although plaintiff was a fit and proper person to have visitation with Kayla, it was in Kayla's best interest for the child to remain in defendant's custody. Prior to the hearing, plaintiff and his wife moved back to North Carolina. The trial court heard evidence from both parties, found both parties to be fit parents, and awarded "primary legal custody" of Kayla to plaintiff and "secondary physical custody" to defendant.

I.

[1] Defendant first appeals the trial court's denial of her motion for a protective order, which she filed approximately two weeks after the entry of the custody order.

ROSERO v. BLAKE

[150 N.C. App. 250 (2002)]

The record shows that on 11 January 2001, defendant gave notice of appeal from the custody order and petitioned this Court for a writ of supersedeas and a temporary stay. On that date, our Court issued a temporary stay but reserved ruling on the writ of supersedeas pending a response by plaintiff. During this time, Kayla continued to live with defendant. However, on 15 January 2001, plaintiff took physical custody of Kayla by removal of the child from the home of her maternal grandmother.

Defendant moved the trial court for a protective order on 17 January 2001, alleging plaintiff had caused Kayla to be "abducted." Defendant further alleged that plaintiff had refused to allow her to have any contact with Kayla. Defendant requested the trial court to (1) "issue an injunction protecting the child by prohibiting the plaintiff from taking her from the defendant's physical custody at any time unless agreed upon by the parties in advance or ordered by" the trial court; and (2) that "plaintiff be ordered to return the child to the defendant's home immediately[.]"

The trial court dismissed defendant's motion on 26 January 2001 on the grounds that because its custody order was on appeal to this Court, the trial court lacked jurisdiction to grant the relief defendant requested. On the same date, this Court denied defendant's petition for a writ of supersedeas and dissolved the temporary stay. However, this Court's order noted that the trial court retained jurisdiction to entertain motions based on defendant's allegations so that it might "enter any interlocutory orders needed to enforce the custody order or to protect the interests of the parties and the welfare of the child pending the outcome of the appeal."

Pursuant to N.C. Gen. Stat. § 1-294, a perfected appeal

stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein; but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from.

N.C. Gen. Stat. § 1-294 (1999). Additionally, our Supreme Court has held that an appeal of a custody order leaves the trial court "*functus officio*" with regard to all custody matters until the cause is remanded. *Joyner v. Joyner*, 256 N.C. 588, 592, 124 S.E.2d 724, 727 (1962). The law of this State mandates that once a custody order is appealed, the trial court is divested of jurisdiction over all matters

specifically affecting custody. *Accord Hackworth v. Hackworth*, 87 N.C. App. 284, 360 S.E.2d 472 (1987).

Nevertheless, defendant contends that since the trial court has a continuing duty to protect Kayla's welfare, it retained jurisdiction to grant the relief she requested. N.C. Gen. Stat. § 50-13.3(a) (1999) states that:

> Notwithstanding the provisions of G.S. 1-294, an order pertaining to child custody which has been appealed to the appellate division is enforceable in the trial court by proceedings for civil contempt during the pendency of the appeal.

Defendant correctly asserts that the trial court's duty to protect Kayla's welfare continues pending the outcome of the appeal. *See Joyner*, 256 N.C. at 591, 124 S.E.2d at 727. Indeed, this Court's order dissolving the temporary stay acknowledges that the trial court retained jurisdiction "to entertain any motions . . . to protect the interests of the parties and the welfare of the child pending the outcome of the appeal."

As our Court noted in *Upton v. Upton*, 14 N.C. App. 107, 187 S.E.2d 387 (1972), filing an appeal did not authorize a violation of the order of the trial court and that " '[o]ne who wilfully violates an order does so at his peril. If the order is upheld by the appellate court, the violation may be inquired into when the case is remanded' " to the trial court. *Id.* at 109, 187 S.E.2d at 389 (quoting *Joyner*, 256 N.C. at 591, 124 S.E.2d at 727).

While in no manner condoning alleged actions of plaintiff in obtaining physical custody of Kayla, the relief sought by defendant appears to be directed toward staying the custody order pending appeal. If the trial court had granted the relief requested by defendant, it would have effectively kept Kayla in defendant's primary custody while the case was on appeal. *See Carpenter v. Carpenter*, 25 N.C. App. 307, 308, 212 S.E.2d 915, 916 (1975) (the purpose of N.C. Gen. Stat. § 1-294 is to prevent the trial court from undertaking the very matters which were embraced in a previous order).

Our Court has stated that upon appeal from the trial court's judgment, " 'all further proceedings in the cause' are suspended in the trial court during the pendency of the appeal, and the trial court 'is without power to hear and determine questions involved in [the pending] appeal[.]' " *Cox v. Dine-A-Mate, Inc.*, 131 N.C. App. 542, 544, 508 S.E.2d 6, 7 (1998) (quoting *Lowder v. Mills, Inc.*, 301 N.C. 561, 580,

273 S.E.2d 247, 258 (1981)). As stated above, N.C.G.S. § 1-294 provides that "appeal of [a] judgment stays all further proceedings in the trial court *'upon the matter embraced therein*[,]' " which in the case before us is the custody of Kayla. *Cox*, 131 N.C. App. at 544, 508 S.E.2d at 7 (emphasis added). The trial court is only empowered to " 'proceed upon any other matter included in the action and *not affected by the judgment appealed from'* . . . so long as they do not concern the subject matter of the suit." *Id.* at 544, 508 S.E.2d at 7-8 (quoting *Woodward v. Local Governmental Employees' Retirement Sys.*, 110 N.C. App. 83, 85-86, 428 S.E.2d 849, 850 (1993)). Both statutory and case law direct that the trial court lost jurisdiction over all matters dealing specifically with custody in this case when defendant appealed the custody order of the trial court. Accordingly, we conclude the trial court properly determined that it was without jurisdiction to grant defendant's motion, which was directly related to and would have affected the custody order that was on appeal.

II.

**[2]** Defendant argues the trial court applied an improper standard in determining who is entitled to custody of Kayla. She contends that since plaintiff has failed to legitimate Kayla, the trial court must first find that defendant is unfit or otherwise unable to care for Kayla before it can apply a "best interest of the child" analysis to determine who should have primary custody. In response, plaintiff asserts the trial court did apply the proper legal standard.

In support of her contention that the trial court applied an improper legal standard, defendant relies on our Supreme Court's decision in *Jolly v. Queen*, 264 N.C. 711, 142 S.E.2d 592 (1965). In *Jolly*, the mother of an illegitimate child petitioned for custody of her seven-year-old son. The evidence showed that the child had lived intermittently with his father and mother but was currently living with his father. Although the father had acknowledged the child as his son, he had failed to "legitimate" the child. The trial court found both the mother and father were fit and suitable persons to have custody but concluded that it was in the child's best interest that primary custody be awarded to the father. Our Supreme Court reversed, holding the trial court applied an improper legal standard. Relying on the common law, the Court stated that the mother of an illegitimate child is presumed to have a superior right to custody of her child as against all others, including the child's putative father.

Our Supreme Court held in *Jolly* that: " 'It is well settled law in this State . . . that the mother of an illegitimate child . . . has the legal right to [the] custody, care and control, if a suitable person, even though others may offer more material advantages in life for the child[.]' " *Jolly*, 264 N.C. at 713-14, 142 S.E.2d at 595 (quoting *Browning v. Humphrey*, 241 N.C. 285, 287, 84 S.E.2d 917, 918 (1954)). The Supreme Court stated that " '[a]s between the putative father and the mother of illegitimate children, it is well established that the mother's right of custody is superior . . . .' " *Jolly*, 264 N.C. at 714, 142 S.E.2d at 595 (quoting 98 A.L.R.2d 417, 431). The Court further held that "[a]s against the right of the mother of an illegitimate child to its custody, the putative father may defend only on the ground that the mother, by reason of character or special circumstances, is unfit or unable to have the care of her child[.]" *Jolly*, 264 N.C. at 714, 142 S.E.2d at 595.

The common law presumption in favor of the mother of an illegitimate child stems in part from an issue peculiar to the illegitimate child's situation: uncertainty as to the identity of the father of the child. When a child is born to a married woman, her husband is legally presumed to be the child's father. *Jones v. Patience*, 121 N.C. App. 434, 466 S.E.2d 720, *disc. review denied*, 343 N.C. 307, 471 S.E.2d 72 (1996). However, no legal presumption arises as to the identity of the father of a child born to an unmarried woman since, "the female is present at the birth of the child and [is] identifiable as the mother," *Stanley v. Illinois*, 405 U.S. 645, 661-62, 31 L. Ed. 2d 551, 564-65 (1972), while the identity of the father may be uncertain. Thus, the putative father of a child is defined as the "alleged or reputed father of a child born *out of wedlock*." Black's Law Dictionary, 1237 (6th ed. 1990) (emphasis added).

The power to abrogate the common law presumption rests only with the General Assembly or our Supreme Court. The General Assembly has specifically established procedures whereby a putative father is given the opportunity to establish his factual or legal identity as a child's father, and thus shift his status from putative father to that of a natural or legal parent. These statutes abrogate, in part, the common law presumption of *Jolly*. See *State v. Green*, 124 N.C. App. 269, 477 S.E.2d 182 (1996), *aff'd*, 348 N.C. 588, 502 S.E.2d 819 (1998), *cert. denied*, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999) (when General Assembly enacts legislation addressing a subject, the statute supplants common law in regard to that matter). Summarized, these statutes are:

1. N.C.G.S. § 49-10 establishes procedures for the putative father to legitimate his illegitimate child. The mother and child are "necessary parties to the proceeding," which allows legitimation when "it appears to the court that the petitioner is the father of the child[.]" N.C. Gen. Stat. § 49-10 (1999).

2. N.C.G.S. § 49-12 provides for automatic legitimation of a child upon the marriage of the putative father to the illegitimate child's mother. N.C. Gen. Stat. § 49-12 (1999).

3. N.C.G.S. § 49-12.1 sets out the procedure for legitimation of a child whose mother is married to someone other than the putative father. The putative father may overcome the presumption of legitimacy arising from the mother's marriage by "clear and convincing evidence." N.C. Gen. Stat. § 49-12.1 (1999).

4. N.C.G.S. § 49-14 provides for a civil action to establish the paternity of an illegitimate child upon "clear, cogent, and convincing evidence." N.C. Gen. Stat. § 49-14 (1999).

Upon compliance with provisions of any of the above statutes, the putative father of an illegitimate child achieves a legal status equal to that of the child's mother:

1. N.C.G.S. § 49-11 states that upon legitimation, the father has "all of the lawful parental privileges and rights, . . . to the same extent as if said child had been born in wedlock[.]" N.C. Gen. Stat. § 49-11 (1999).

2. N.C.G.S. § 49-15 provides that, "*after* [a judicial] *establishment of paternity* of an illegitimate child pursuant to G.S. 49-14, the rights, duties, and obligations of the mother and the father so established, with regard to support and custody of the child, shall be the same[.]" N.C. Gen. Stat. § 49-15 (1999) (emphasis added).

Therefore, after the putative father legitimates his child according to statutory provision, or submits to a judicial determination of paternity, the child's parents stand on an equal footing as regards to custody. *See Conley v. Johnson*, 24 N.C. App. 122, 210 S.E.2d 88 (1974) (upholding award of visitation rights to the father of an illegitimate child, following judicial determination that he was the child's father; Court notes abrogation of common law by compliance with N.C.G.S. § 49-14).

As to whether plaintiff has taken the necessary steps to legitimate Kayla, this Court has identified several procedures by which a bio-

**ROSERO v. BLAKE**

[150 N.C. App. 250 (2002)]

logical father may legitimate his child: (1) through a verified petition filed with the superior court seeking to have the child declared legitimate, (2) by subsequent marriage to the mother, or (3) through a civil action to establish paternity filed pursuant to N.C. Gen. Stat. § 49-14. *Helms v. Young-Woodard*, 104 N.C. App. 746, 749-50, 411 S.E.2d 184, 756 (1991), *disc. review denied*, 331 N.C. 117, 414 S.E.2d 756, *cert. denied*, 506 U.S. 829, 121 L. Ed. 2d 53 (1992); *see also* N.C. Gen. Stat. §§ 49-10 through 49-17 (1999).

In this case, the record shows that plaintiff filed a "Father's Acknowledgment of Paternity" under N.C. Gen. Stat. § 110-132, by which he acknowledged his paternity of Kayla. In addition, plaintiff agreed to provide support, and an order of paternity was approved which states that it "shall have the same force and effect as a judgment of paternity entered by this Court pursuant to Chapter 110[.]" However, plaintiff has not taken any of the steps outlined in *Helms* to legitimate Kayla. The parties concede that plaintiff neither legitimated Kayla as provided by statute, nor did he seek a judicial determination of paternity under N.C.G.S. § 49-14.

We are aware of recent statutory and case law dealing with the constitutionally protected right of a biological parent to the care and custody of his or her child. For example, since *Jolly*, the United States Supreme Court has acknowledged on several occasions that due process and equal protection mandate that a biological parent may not be denied the companionship, custody and control of a child absent a showing of unfitness. *See Stanley*, 405 U.S. 645, 31 L. Ed. 2d 551 (holding that in a dependency proceeding following the death of an illegitimate child's natural mother, due process requires that the unwed father be given a hearing on his fitness as a parent before the child can be taken from him); *Lehr v. Robertson*, 463 U.S. 248, 77 L. Ed. 2d 614 (1983) (holding that where an unwed father has failed to developed a significant custodial, personal or financial relationship with his child, due process does not entitle him to notice of the child's adoption proceedings).

Similarly, our Supreme Court has held that unless a trial court finds that a parent is unfit, has neglected the welfare of the child, or has exhibited other conduct inconsistent with the parent's constitutionally protected status, the parent's paramount right to custody, care, and control of the child must prevail. *Petersen v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994). *See also, Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997).

ROSERO v. BLAKE

[150 N.C. App. 250 (2002)]

In addition, since *Jolly*, our General Assembly has enacted statutory safeguards for biological parents and illegitimate children. Indeed, the *Jolly* court specifically noted that under the laws then existing, a child would not have been entitled to inherit from his father or his father's relatives and that the father's consent would not have been required for adoption. *Jolly*, 264 N.C. at 715, 142 S.E.2d at 595-96. However, under current intestacy laws, Kayla would be entitled to inherit from and through plaintiff, and plaintiff would be entitled to inherit from and through her, in that plaintiff acknowledged himself to be Kayla's father pursuant to N.C. Gen. Stat. § 29-19(b)(2) (1999). Plaintiff's consent would also now be required for her adoption. *See* N.C. Gen. Stat. § 48-3-601 (1999).

Likewise, other statutes acknowledge the constitutionally protected rights afforded to a biological father who has acknowledged paternity but may not have legitimated his child. *See e.g.*, N.C. Gen. Stat. § 7B-1111 (1999) (grounds for termination of parental rights); N.C. Gen. Stat. § 101-2 (1999) (consent required for change in name). Further, North Carolina law now provides illegitimate children, upon an acknowledgment of paternity, with benefits which had previously been unavailable. *See e.g.*, N.C. Gen. Stat. § 31-5.5 (1999) (requiring after-identified illegitimate children to be treated the same as after-born and after-adopted children in testamentary disposition under a will); N.C. Gen. Stat. § 97-2 (12) (1999) (including "acknowledged illegitimate child" within the definition of "child" under the Workers' Compensation Act); N.C. Gen. Stat. §§ 143-166.1 through .7 (recognizing acknowledged illegitimate child's right to death benefits provided to state law enforcement officers, firemen and rescue squad workers).

In this case, the record shows that plaintiff has acknowledged paternity pursuant to N.C.G.S. § 110-132 and has held Kayla out as his child. Upon confirmation of his acknowledgment, plaintiff began providing Kayla with financial support and has had overnight visits in Oklahoma and North Carolina where he and his wife have developed a "close bond" with her. However, these actions did not dissolve the presumption in favor of defendant.

There are significant differences between the procedures outlined in N.C.G.S. § 110-132 for acknowledgment of paternity in an agreement to provide child support and those governing the legitimation of a child. N.C.G.S. § 110-132 specifically governs child support, rather than child welfare and custody generally. One of the "express purposes of Article 9 of Chapter 110 of the General Statutes is 'to pro-

vide for . . . support[.]' " *Dept. of Social Services v. Williams*, 52 N.C. App. 112, 115, 277 S.E.2d 865, 867 (1981) (quoting N.C. Gen. Stat. § 110-128 (1999)). However, " '[t]he entire thrust of a civil action under G.S. 49-14 is the determination of whether or not the defendant is the natural father of the illegitimate child in question.' " *King v. King*, 144 N.C. App. 391, 395, 547 S.E.2d 846, 849 (2001) (quoting *Carrington v. Townes*, 306 N.C. 333, 336, 293 S.E.2d 95, 98 (1982)). Therefore, as to custody, N.C.G.S. §§ 49-14 and 49-15, which explicitly address the determination of paternity and its effect on custody issues, should prevail over general provisions of Chapter 110 acknowledging paternity for child support purposes.

Secondly, N.C.G.S. § 49-14 requires paternity to be established by "clear, cogent, and convincing evidence[,]" necessarily requiring judicial evaluation of the record evidence. N.C.G.S. § 49-14(b); *Brown v. Smith*, 137 N.C. App. 160, 526 S.E.2d 686 (2000) (mother's testimony that putative father was her only sexual partner, coupled with child's resemblance to putative father, held sufficient to allow court to determine paternity); *Nash County Dept. of Social Services v. Beamon*, 126 N.C. App. 536, 485 S.E.2d 851, *disc. review denied*, 347 N.C. 268, 493 S.E.2d 655 (1997) (court's determination that defendant was *not* the child's father upheld where supported by defendant's testimony denying paternity, notwithstanding introduction of blood test evidence showing a 99.96 percent probability that defendant was the father). In contrast, an order of paternity may be issued pursuant to N.C.G.S. § 110-132 upon the execution of affidavits, with no requirement of judicial evaluation of the evidence, or standard for the court to apply.

Thirdly, N.C.G.S. § 110-132 explicitly provides for possibility of recision, and the statutory language limits the *res judicata* effect of an acknowledgment of paternity under N.C.G.S. § 110-132 to child support actions. N.C.G.S. § 110-132(a) (1999) (acknowledgment of paternity "shall have the same legal effect as a judgment of paternity *for the purpose of . . . child support*[.]") (emphasis added). However, the putative father may bring a later challenge to the underlying question of paternity. *Leach v. Alford*, 63 N.C. App. 118, 124, 304 S.E.2d 265, 269 (1983) (*res judicata* language in N.C.G.S. § 110-132 "applies to child support proceedings," and does not bar relief "from the underlying acknowledgment (judgment) of paternity").

There is no statutory authority for legitimation, or for equal status regarding child custody, under Chapter 110. Nor is there statutory

support for any change in a putative father's status based upon his general indication of interest in or affection for the child. We apply to this issue the canon of statutory construction "embodied in the maxim, *expressio unius est exclusio alterius*, meaning the expression of one thing is the exclusion of another[.]" *Dickens v. Puryear*, 302 N.C. 437, 444 n.8, 276 S.E.2d 325, 330 n.8 (1981) (where subject tort not included in statutory list of actions governed by one-year statute of limitations, the exclusion is considered intentional). We therefore conclude that the General Assembly, by specifying certain procedures to confer parental status upon the putative father of an illegitimate child, necessarily excluded other procedures. For this reason, we conclude that plaintiff's execution of documents pursuant to the child support provisions of Chapter 110 of the N.C. General Statutes did not erase the common law presumption in favor of defendant.

In North Carolina, "[a]ll such parts of the common law . . . which [have] not been otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete, are . . . in full force within this State." N.C. Gen. Stat. § 4-1 (1999). Morever, while the North Carolina Supreme Court "possesses the authority to alter judicially created common law when it deems it necessary in light of experience and reason[,]" *State v. Freeman*, 302 N.C. 591, 594, 276 S.E.2d 450, 452 (1981) (citations omitted), this Court does not possess such authority. We are mindful of the actions taken by plaintiff in this case in regard to his parental role. However, as stated above, the limits of this Court's authority require that a plaintiff's "equitable challenge must yield to our judicial stricture to follow the statutory law, not make it." *In re Adoption of Byrd*, 137 N.C. App. 623, 628, 529 S.E.2d 465, 469 (2000), *aff'd*, 354 N.C. 188, 552 S.E.2d 142 (2001).

The common law rule remains in effect until altered by enactment of the General Assembly or ruling of the North Carolina Supreme Court. Based upon the facts of this case, the trial court incorrectly applied the "best interest of the child" analysis and should have applied the common law presumption set forth in *Jolly*, 264 N.C. 711, 142 S.E.2d 592. The decision of the trial court is reversed and the matter is remanded for a new hearing applying the common law presumption in favor of defendant.

Reversed and remanded.

Judge BIGGS concurs.

**ROSERO v. BLAKE**

[150 N.C. App. 250 (2002)]

Judge WALKER concurs in part and dissents in part with a separate opinion.

WALKER, Judge, concurring in part and dissenting in part.

I concur with the majority's conclusion that the trial court properly determined that it was without jurisdiction to grant defendant's motion for a protective order. However, for the following reasons, I respectfully dissent from that portion of the majority's opinion which holds the trial court applied an improper legal standard in determining who should have custody of Kayla.

I.

As the majority correctly points out, N.C. Gen. Stat. § 4-1 mandates that "[a]ll such parts of the common law . . . which [have] not been otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete are . . . in full force within this State." N.C. Gen. Stat. § 4-1 (2001). However, in my opinion, the cumulative impact of the decisions handed down by the United States Supreme Court and our own Supreme Court, along with the laws enacted by our legislature since *Jolly v. Queen*, 264 N.C. 711, 142 S.E.2d 592 (1965), has been the abrogation of the common law principle that as between the mother and the father of an illegitimate child, the mother is presumed to have a superior right to custody.

In addition to the extensive case and statutory law cited in the majority opinion, I feel that our legislature has acknowledged such an abrogation in N.C. Gen. Stat. § 50-13.2. In a custody proceeding arising pursuant to N.C. Gen. Stat. §§ 50-13.1 *et seq.* as "[b]etween the mother and father, whether natural or adoptive, *no presumption shall apply* as to who will better promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2(a) (2001) (emphasis added). This Court has consistently observed that §§ 50-13.1 *et seq.* were enacted in 1967 to "eliminate the conflicting and inconsistent statutes, which have caused pitfalls for litigants, and to bring all of the statutes relating to child custody and support together into one act." *In re Holt*, 1 N.C. App. 108, 111, 160 S.E.2d 90, 93 (1968); *see also In re King*, 3 N.C. App. 466, 165 S.E.2d 60 (1969); *and Johnson v. Johnson*, 14 N.C. App. 378, 188 S.E.2d 711 (1972). "Had the Legislature intended G.S. 50-13.1 to apply to only those custody disputes involved in a divorce or separation, it would have expressly so provided, as it did in the prior statutes G.S. 50-13 and G.S. 50-16. The mere fact that G.S. 50-13.1 is found in the Chapter of the General Statutes governing

ROSERO v. BLAKE

[150 N.C. App. 250 (2002)]

Divorce and Alimony is not sufficient to cause its application to be restricted to custody disputes involved in separation or divorce." *Oxendine v. Catawba County Dept. of Social Services*, 303 N.C. 699, 706, 281 S.E.2d 370, 374 (1981). Furthermore, this Court, in *Conley v. Johnson*, 24 N.C. App. 122, 210 S.E.2d 88 (1974), specifically recognized the abrogation of the common law principle that the father of an illegitimate child is not entitled to visitation privileges absent consent of the mother. *Conley*, 24 N.C. App. at 123, 210 S.E.2d at 89.

Therefore, my review of the statutory and case law since *Jolly* leads me to conclude that any presumption of a superior right to custody afforded to the mother of an illegitimate child can only arise today upon a showing that the father has failed to accept the responsibilities associated with parenthood such that he is no longer entitled to the constitutional and statutory safeguards provided to a parent. Absent this showing, the trial court must confine itself to a determination of what is in the best interest of the child. *See Adams v. Tessener*, 354 N.C. 57, 61, 550 S.E.2d 499, 502 (2001) (observing that in custody proceedings between biological or adoptive parents, or between two parties who are not natural parents, the trial court must determine custody based on the "best interest of the child" test).

The fact that plaintiff has failed to file the documents necessary to "legitimate" Kayla should be only one factor to consider in whether he has assumed the responsibilities of parenthood. To establish such a prerequisite for the enjoyment of constitutional protections simply raises form over substance and relegates plaintiff to the status of a third party despite the absence of any dispute concerning his paternity of Kayla. Indeed, on remand plaintiff would be well advised to seek leave of the trial court so that he might file a legitimation petition pursuant to N.C. Gen. Stat. § 49-10. Presumably, defendant would not contest paternity and the parties, as the majority's opinion suggests, would then be on equal footing with respect to Kayla's custody.

The record clearly shows plaintiff has not relinquished his parental rights and the obligations required thereunder. Accordingly, I conclude the trial court correctly applied the "best interest of the child" test.

II.

Defendant also maintained that the trial court abused its discretion in awarding "primary legal custody" of Kayla to plaintiff. Our

appellate courts have consistently held that where competent evidence exists to support a trial court's findings, a custody order supported by such findings will not be disturbed on appeal absent an abuse of discretion. *Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998); *Swicegood v. Swicegood*, 270 N.C. 278, 154 S.E.2d 324 (1967); *Church v. Church*, 119 N.C. App. 436, 458 S.E.2d 732 (1995); *Green v. Green*, 54 N.C. App. 571, 284 S.E.2d 171 (1981). This is so because by seeing and hearing the parties first hand, the trial court is better positioned to "detect tenors, tones, and flavors" which are absent in a cold, impersonal record. *Newsome v. Newsome*, 42 N.C. App. 416, 426, 256 S.E.2d 849, 855 (1979). Nonetheless, "when the [trial] court fails to find facts so that this Court can determine that the order is adequately supported by competent evidence and the welfare of the child subserved, then the order entered thereon must be vacated and the case remanded for detailed findings of fact." *Crosby v. Crosby*, 272 N.C. 235, 238-39, 158 S.E.2d 77, 80 (1967); *see also Green*, 54 N.C. App. at 573, 284 S.E.2d at 173.

This Court has vacated custody orders where the findings consisted of merely conclusory statements, ignored critical issues or were otherwise deficient such that we were unable to determine whether the custody award was in the best interest of the child. *See e.g. Cantrell v. Wishon*, 141 N.C. App. 340, 540 S.E.2d 804 (2000); *Hunt v. Hunt*, 112 N.C. App. 722, 436 S.E.2d 856 (1993); *Dixon v. Dixon*, 67 N.C. App. 73, 312 S.E.2d 669 (1984); *Montgomery v. Montgomery*, 32 N.C. App. 154, 231 S.E.2d 26 (1977); and *Austin v. Austin*, 12 N.C. App. 286, 183 S.E.2d 420 (1971). As this Court has aptly stated, the "[e]vidence must bolster the trial court's findings, the findings must support the conclusions, and the conclusions must support the judgment." *Green*, 54 N.C. App. at 575, 284 S.E.2d at 174.

In conducting my review of the custody order, I elect to review the following findings:

6. That in December, 1995, the Plaintiff moved to Oklahoma. When the child was born, the Plaintiff requested a paternity test and he voluntarily supported the child upon receiving a confirmation that he was the biological father of the child.

There is no competent evidence to support a finding that when Kayla was born, plaintiff requested a paternity test. Rather, the evidence clearly points to plaintiff as having agreed to submit to a paternity test at the behest of the Wake County Child Support Agency. It was only after the test that plaintiff acknowledged paternity.

ROSERO v. BLAKE

[150 N.C. App. 250 (2002)]

The trial court also found:

8. That the Defendant's ex-boyfriend, Clea Johnson, who is father to the two (2) other minor children, has a relationship with the minor child, Kayla. The child has called him "daddy Clea" and that relationship has led to the confusion of the child.

9. That the defendant is presently involved with Moheeb Oona and this relationship has led to the confusion of the minor child.

These findings conclude that defendant's relationships with other men have led to "the confusion" of Kayla. However, neither finding explains how Kayla is "confused" or details the impact these relationships have had on Kayla's welfare.

With respect to Kayla's care, the trial court found:

14. That the Defendant's mother and grandmother get the child ready for school in the mornings, pick her [up] from daycare, feed her dinner, bathe her and put her to bed on a regular basis.

. . .

19. That the minor child is enrolled at Ernest Myatt daycare center and has been so enrolled since she was two (2) years old. From her birth until age two (2), the minor child was cared for by the Defendant's grandmother.

While there is competent evidence to support a finding that defendant's mother and grandmother have played a role in Kayla's care, the evidence does not indicate, as these findings suggest, that defendant's mother and grandmother have played such a dominant role to the exclusion of defendant. The findings also fail to consider defendant's status as a single mother and the impact of her having received support payments from plaintiff in amounts less than what would have been required under our State's child support guidelines. Rather, the findings only state:

22. That the Plaintiff paid voluntary child support to the Defendant upon the determination of paternity and there was no Order for Child Support entered. The parties agreed upon an amount of support and it was paid regularly and consistently by the Plaintiff.

The trial court next addressed defendant's being away from Kayla and found:

30. That the Defendant is not with the minor child a lot but rather she is at work or out with friends. The Defendant does go out 2-3 times per month on the weekends and the minor child is with the Defendant's mother.

This statement is merely a conclusion concerning defendant's lifestyle without relating how, if at all, Kayla's best interest or welfare has been adversely affected.

The trial court does make specific reference to Kayla's behavioral development in the following findings:

27. That the minor child, Kayla, is a happy, lively child but she does have some problems. While at the daycare, the child was hitting, biting, scratching other children. These behaviors are not unusual in and of themselves, however, what is unusual is that the daycare contacted Project Enlightenment to monitor the child's progress.

28. That after the evaluation was conducted by Project Enlightenment, the Defendant did not follow through with informing herself about the results and she believed that the child was just going through a phase. The needs of the child were underestimated by the Defendant.

However, the evidence in the record shows that after further consultations with Kayla's teachers, the Project Enlightenment consultant noted that her behavior had improved and closed the case. Moreover, the findings fail to identify the "needs" of Kayla, which were "underestimated" by defendant.

In some instances, the trial court alludes to defendant having failed to meet Kayla's "needs." For example, the trial court found:

29. That the minor child needs more attention than she is getting from the Defendant. The minor child needs more structure than she is getting from the Defendant. The Defendant does not offer the minor child a stable and consistent environment.

. . .

32. That the Defendant's social life and work schedule has led to a hectic household which does not meet the needs of the child for stability and consistency.

Yet, these findings likewise do not detail what Kayla's "needs" are or how they have not specifically been met by defendant.

Thus, I conclude that these specific findings demonstrate that the trial court has failed to find facts so that this Court may satisfactorily determine whether its order awarding primary custody to plaintiff is adequately supported by competent evidence. Therefore, although I conclude the trial court applied the proper legal standard, I would vacate the custody order and remand the case to the trial court for more detailed findings.