**DAVID v. FERGUSON**

[153 N.C. App. 482 (2002)]

ROBERT ANTHONY DAVID, Plaintiff v. SHARON ALICIA FERGUSON, Defendant

No. COA02-84

(Filed 15 October 2002)

**1. Child Support, Custody, and Visitation— custody—jurisdiction—residence of children—preceding six months**

The North Carolina court did not err by assuming jurisdiction over a custody dispute between the parents of illegitimate children where the children had been living in Maryland with their mother but lived with plaintiff in North Carolina for the six months before commencement of the proceeding. N.C.G.S. § 50A-102(7); N.C.G.S. § 50A-201.

**2. Child Support, Custody, and Visitation— custody—parental kidnapping—no formal agreement**

The Parental Kidnapping Prevention Act did not prevent a North Carolina court from making an initial custody determination for children of unmarried parents where a parent who lived in Maryland alleged only a custody informal agreement and no action by any court.

**3. Child Support, Custody, and Visitation— custody—best interest analysis—illegitimate children**

The trial court erred in a child custody dispute by applying a best interest analysis where the parties were never married and the record does not indicate that the children were ever legitimated pursuant to N.C.G.S. § 49-10 or that paternity was judicially established pursuant to N.C.G.S. § 49-14.

**4. Child Support, Custody, and Visitation— custody—private agreement—jurisdiction of court**

In a child custody case decided on another issue, it was noted that a private custody agreement between the parties that was not entered by any court in any state could not divest the courts of their statutory authority to make custody determinations.

Appeal by defendant from order entered 21 June 2001 by Judge Christopher W. Bragg in Richmond County District Court. Heard in the Court of Appeals 18 September 2002.

*Deane, Williams & Deane, by Jason T. Deane, for plaintiff.*

*Henry T. Drake for defendant.*

**DAVID v. FERGUSON**

[153 N.C. App. 482 (2002)]

BRYANT, Judge.

Plaintiff Robert Anthony David is the father of Crystal Alanda David, born 20 June 1999, and Nicole Ashley David, born 7 October 1994. The children were born during plaintiff's relationship with defendant Sharon Alicia Ferguson. Although not married, the parties lived together with the children in Richmond County, North Carolina for approximately six years. Sometime in February 2000, however, defendant moved to Maryland and took the children with her.

In June 2000, defendant sent the children back to plaintiff, in North Carolina, so that she could pursue full-time employment. According to defendant, the parties agreed that at some time in the future, the children would be returned to defendant in Maryland. However, when defendant attempted to come get the children in December 2000, plaintiff allegedly hid the children from her. Thereafter, plaintiff filed a custody action on 12 January 2001.

This matter came for hearing on 10-11 May 2001 at Richmond County District Court with the Honorable Christopher W. Bragg presiding. The trial court concluded that both parties were fit and proper persons to have custody of the children but that it was in the best interest of the children for plaintiff to be awarded primary custody. The trial court's order was filed on 21 June 2001. Defendant gave notice of appeal on 17 July 2001.

## I.

[1] First, defendant argues that the trial court erred in assuming jurisdiction over the matter because the children were domiciled in the state of Maryland. We disagree.

The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) is a jurisdictional statute relating to child custody, and is codified in Chapter 50A of the North Carolina General Statutes. The jurisdictional requirements of the UCCJEA must be satisfied even though N.C.G.S. § 50-13.1 generally provides our courts jurisdiction to determine custody matters. We first note that the parties in this matter voluntarily submitted to the jurisdiction of the trial court.

N.C.G.S. § 50A-201 (2001), provides in pertinent part:

(a) Except as otherwise provided in G.S. 50A-204, a court of this State has jurisdiction to make an initial child-custody determination only if:

(1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) A court of another state does not have jurisdiction under subdivision (1). . . ;

(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under G.S. 50A-207 or G.S. 50A-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

(b) Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this State.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

N.C.G.S. § 50A-102(7) (2001), in pertinent part, defines home state as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period."

In the instant case, the facts clearly reveal that for a period of at least six months immediately preceding the commencement of this proceeding, from June 2000 to January 2001, the children lived with plaintiff in North Carolina. Based on this fact, the trial court was vested with jurisdiction to make an initial custody determination, as North Carolina was the home state of the children.

[2] Defendant asserts that the Parental Kidnaping Prevention Act (PKPA) prevented the trial court from modifying an existing agreement that was enforceable in Maryland. However, the PKPA applies to "any custody determination or visitation determination made consistently with the provisions of this section *by a court of another*

*State.*" 28 U.S.C.A. § 1738A(a) (2002) (emphasis added). The PKPA does not apply to the facts in our case as defendant only alleges the existence of an informal agreement between the parties and no action by a court of any state.

The facts indicate that North Carolina is the home state of the children as home state is defined pursuant to the UCCJEA. Therefore, the trial court was of competent jurisdiction to make an initial custody determination in this matter. This assignment of error is overruled.

## II.

[3] Second, defendant argues that the trial court committed error in granting custody of the two illegitimate children to plaintiff when defendant was found to be a good, proper and fit person to have custody of the children. Based on binding authority established in *Rosero v. Blake*, we find that the trial court committed error in applying the best interest test to our case facts. *Rosero v. Blake*, 150 N.C. App. 250, 563 S.E.2d 248, *temporary stay allowed*, 355 N.C. 751, 565 S.E.2d 670, *review allowed, writ allowed*, 356 N.C. 166, —— S.E.2d ——, 2002 WL 2005421 (2002). Therefore, for the following reasons, we reverse the trial court's order granting custody to plaintiff.

In *Rosero*, the father and mother were the parents of Kayla Alexandria Rosero, who was born on 20 March 1996. The parties had a brief relationship in 1995, and in December 1995, the father moved to the state of Oklahoma. After Kayla's birth, the father agreed to submit to paternity testing which confirmed that he was the biological father of Kayla. The father acknowledged paternity by signing an acknowledgment of paternity form on 3 March 1997. The parties agreed that Kayla would remain in her mother's custody and that the father would provide support for the child.

During the next three years, Kayla visited with her father and his wife on several occasions. The father maintained contact with Kayla through letters, telephone calls, and visits when he traveled to North Carolina.

On 22 March 2000, the father filed an action seeking custody of Kayla. The mother responded and filed a counterclaim for custody, alleging that although the father was a fit and proper person to have visitation with Kayla, it was in Kayla's best interest for the child to remain in her custody. The trial court found that both parties were fit

parents and awarded primary custody to the father and secondary custody to the mother. The mother appealed.

On appeal, our Court stated in pertinent part:

Our Supreme Court held . . . that: " 'It is well settled law in this State . . . that the mother of an illegitimate child . . . has the legal right to [the] custody, care and control, if a suitable person, even though others may offer more material advantages in life for the child[.]' " The Supreme Court stated that " '[a]s between the putative father and the mother of illegitimate children, it is well established that the mother's right of custody is superior. . . .' " The Court further held that "[a]s against the right of the mother of an illegitimate child to its custody, the putative father may defend only on the ground that the mother, by reason of character or special circumstances, is unfit or unable to have the care of her child[.]"

The common law presumption in favor of the mother of an illegitimate child stems in part from an issue peculiar to the illegitimate child's situation: uncertainty as to the identity of the father of the child. . . .

. . . The General Assembly has specifically established procedures whereby a putative father is given the opportunity to establish his factual or legal identity as a child's father, and thus shift his status from putative father to that of a natural or legal parent. . . .

. . . .

. . . [A]fter the putative father legitimates his child according to statutory provision, or submits to a judicial determination of paternity, the child's parents stand on an equal footing as regards to custody.

As to whether plaintiff has taken the necessary steps to legitimate Kayla, this Court has identified several procedures by which a biological father may legitimate his child: (1) through a verified petition filed with the superior court seeking to have the child declared legitimate, (2) by subsequent marriage to the mother, or (3) through a civil action to establish paternity filed pursuant to N.C. Gen. Stat. § 49-14.

In this case . . . plaintiff has not taken any of the steps . . . to legitimate Kayla. The parties concede that plaintiff neither legiti-

mated Kayla as provided by statute, nor did he seek a judicial determination of paternity under N.C.G.S. § 49-14.

. . . .

In this case, the record shows that plaintiff has acknowledged paternity pursuant to N.C.G.S. § 110-132 and has held Kayla out as his child. . . . However, these actions did not dissolve the presumption in favor of defendant.

. . . .

. . . Based upon the facts of this case, the trial court incorrectly applied the "best interest of the child" analysis and should have applied the common law presumption set forth in *Jolly* . . . . The decision of the trial court is reversed and the matter is remanded for a new hearing applying the common law presumption in favor of defendant.

*Rosero*, 150 N.C. App. at 255-60, 563 S.E.2d at 252-55. (citations omitted)

The facts in the instant case are significantly similar to those reviewed by the *Rosero* Court. In the instant case, the record does not indicate the children were ever legitimated pursuant to N.C.G.S. § 49-10 or that paternity was judicially established pursuant to N.C.G.S. § 49-14. As *Rosero* is binding precedent and because one panel of this Court cannot overturn a prior decision of this Court, we are bound by the determinations made in *Rosero*. Therefore, we conclude that the trial court erred in applying the best interest analysis based on the facts in the instant case. Moreover, because the trial court has already established that defendant is a proper and fit person to have custody of the children, we reverse the decision of the trial court and remand for the trial court to order custody in favor of defendant.

## III.

[4] Third, defendant argues that the trial court erred in modifying an existing custody agreement without finding a substantial change of circumstances.

A diligent review of the record does not indicate that a prior custody agreement had been entered by any court of any state regarding the children. Any prior, existing agreement was at best a private agreement between the parties; and such private agreement would not have the inherent, sole ability to divest the courts of their statu-

tory authority to make custody determinations. However, because we have already found that the trial court committed error in its application of the best interest test and in awarding custody to plaintiff, we deem it unnecessary to further analyze this issue.

Fourth, defendant argues that the trial court erred in finding that a parental grandparent of illegitimate children had a superior right of custody over a good, proper and fit mother.

Our diligent review of the custody order in dispute reveals that the paternal grandparent was not granted custody rights, as alleged by defendant. Rather, the trial court considered as a factor in making its best interest analysis that the paternal grandparent would be able to assist in the care of the children. We have already found that the trial court committed error in its application of the best interest test and in awarding custody to plaintiff and deem it unnecessary to provide any additional analysis of this issue.

## MANDATE

The order of the trial court is reversed and remanded for the trial court to enter custody in favor of defendant pursuant to the analysis provided *supra* issue II.

Reversed and remanded.

Judges McCULLOUGH and TYSON concur.